**Roosevelt BEAVERS, Appellant,**
v.
**STATE of Texas, Appellee.**
**No. 01–81–0477–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 13, 1982.

Discretionary Review Refused
Sept. 15, 1982.

Janet S. Morrow, Houston, for appellant.

Larry Urquhart, Asst. Dist. Atty., Houston, for appellee.

Before DUGGAN, WARREN and PRICE, JJ.

## OPINION

DUGGAN, Justice.

Appellant was convicted of murder by a jury; punishment was then assessed by the court at life imprisonment.

By the testimony of a state's witness, who was appellant's brother, it was established that appellant and his brother had driven to a secluded field in Harris County with the deceased, who was appellant's girlfriend, and that appellant there struck the deceased on the back of her head with a tire jack handle, doused her with gasoline, and set her on fire. She was subsequently found dead in the field by other persons. Appellant presents four grounds of error. We affirm.

By his first ground of error, appellant alleges the trial court abused its discretion in finding appellant's brother, Charles Beavers, mentally competent to testify, thereby denying appellant due process of law. Under Art. 38.06(2), V.A.C.C.P., all persons are competent to testify in criminal cases except

> 2. Children and other persons who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath.

As stated in *Watson v. State*, 596 S.W.2d 867 (Tex.Cr.App.1980),

> It has also been said that there are three elements which must be considered in determining whether a witness is in fact competent to testify. The first is capacity to observe intelligently at the time of the events in question. The other elements of capacity are recollection and narration, though the former is usually merged into the latter. (citation omitted). The capacity to narrate involves on the one hand, both an ability to understand the questions asked and to frame intelligent answers and, on the other hand, a moral responsibility to tell the truth. *If a person afflicted with a physical or mental disability possesses sufficient intelligence to receive correct impressions of events he sees, retains clear recollection of them and is able to communicate them through some means, there is no reason for rejecting his testimony.* (original and added emphases; citation omitted.)

596 S.W.2d at 870, 871. The question of the competency of a witness is one for the trial court. The question of credibility of the witness is one for the jury. The court's decision as to the witnesses's competency may be based on voir dire examination of the prospective witness, or on the evidence of others. The burden of raising and proving incompetency is on the party alleging it, and the showing must be by a preponderance of the evidence. *Hennington v. State*, 101 Tex.Cr.R. 12, 274 S.W. 599 (1925); *Foster v. State*, 142 Tex.Cr.R. 615, 155 S.W.2d 938 (1941). In reviewing a trial court's decision as to the competency of a witness, the applicable standard is whether the trial court abused its discretion. In so deciding, the reviewing court may consider the entire record, including the witness's trial testimony. *Villarreal v. State*, 576 S.W.2d 51 (Tex. Cr.App.1978).

It was established and undisputed that Charles Beavers, the State's sole eyewitness, suffered from severe mental retarda-

tion. Although he was 30 years old, his mental development was that of a 5½ year old. Appellant's trial counsel requested and obtained a pre-trial hearing to determine Charles' competency. Evidence heard included the testimony of Charles Beavers, his mother, Dr. Paul Malone, and the report of psychologist Dr. Robert White. Dr. White's conclusion in his letter stated:

The client did not give any signs of a mental health disorder, other than mental retardation. He appears to be in good contact with reality at his level of development. However, he is not considered to be a reliable witness for any complex and fast-occurring event. In order to determine his possible experiences one would have to offer him multiple choice answers. . . . Even when this is done, the information he could relate would be limited by the choices that he was offered. And, if a 'correct' internal choice were not offered, he would choose one of those offered to him. The client is not trying to deliberately mislead others; he simply does not have the necessary cognitive skills to communicate adequately. The examiner judges that his testimony as a witness would not be reliable.

The trial judge acknowledged out of the presence of the jury that he had considered the psychologist's letter in reaching his decision on competency.

The competency hearing testimony included the following:

(Prosecution): But is (Charles) able in the way that you and he communicates, able to relate to you and tell you things that he has observed?

(Charles' Mother): Some.

\* \* \* \* \* \*

(Prosecution): So he would appear to you to at least understand right from wrong?

(Mother): Well, if I tell him, 'If you do such a thing, the police will pick you up.'

Q. Yes, ma'am.

A. Well, he won't do that.

Q. So he must understand?

A. Well, he's scared of the law.

\* \* \* \* \* \*

(Defense Counsel): As his mother and being the one closest to him for his 30 years of life, are you of the opinion that he does not have a factual basis to determine right from wrong? He's not able to do that on a factual basis.

(Mother): Not on his own, no, sir.

\* \* \* \* \* \*

(Defense Counsel): What is a lie? If you don't know, you can say you don't know.

(Charles): I don't know.

\* \* \* \* \* \*

(Prosecution): Mr. Beavers, do you know the difference between telling the truth and telling something that is not true?

The Court: You are indicating yes?

The Witness: Yeah.

Q. If I were to say my coat is green as opposed to brown, then I'd be telling a lie, wouldn't I?

A. Yeah.

Q. So you know the difference between telling something that's true and real as opposed to just making something up and telling it? Are you nodding your head yes? You have to speak up.

A. Yeah.

The Court: Let me ask you this, Charles: What happens to people who tell lies? What is your idea of what happens to them?

The Witness: You get in trouble.

The Court: You get in trouble? In other words, it is wrong and you are punished if you tell a lie?

The Witness: Right.

The Court: If you are called to testify in this case, will you tell the truth?

The Witness: Yeah, I tell it.

The Court: Then you understand if you don't, then you would be punished? Do you understand that?

The Witness: Yeah.

At the conclusion of the competency hearing, the trial court held Charles Beavers competent to testify.

At trial itself, in establishing the alleged crime, Charles testified on direct examination as follows:

Q. Did anybody have any gasoline?

A. Yeh.

Q. Who had gasoline? Pinky had gasoline?

A. No.

Q. Did you have gasoline, Charles?

A. No. I ain't got no gas.

Q. Then who had that gasoline?

A. Roosevelt.

Q. Roosevelt had the gasoline?

A. Roosevelt.

Q. Roosevelt had the gasoline? Did you see what Roosevelt did with it?

A. Yeah.

Q. What did he do with the gasoline?

A. Burned.

Q. He burned what?

A. Pinky.

Q. Did you see Pinky get burned up?

A. Huh-uh.

Q. Did you hear Pinky say anything to Roosevelt?

A. He didn't say nothing.

Q. Did she say anything to Roosevelt about the gasoline?

A. No. Didn't say nothing.

[Prosecution]: For the record, this is State Exhibit No. 19.

Q. Charles, would you look at that for me, please? Do you know what that thing is?

A. Yeah, I know what it is.

Q. Okay. Tell me what it is.

A. A jack handle.

Q. It's a jack handle?

A. Yeah.

\*　　\*　　\*　　\*　　\*　　\*

Q. Did you ever see Roosevelt use a jack handle the day that you were in the woods with Pinky and Roosevelt?

A. Yeah.

Q. And what did you see him do with the jack handle?

A. Hit her upside the head.

Q. He hit who upside the head.

A. Pinky.

Q. What did Pinky say at that point?

A. She didn't say nothing.

Q. Did she fall down or did she stay standing up?

A. Standing down, I guess.

 While the appellant contends that the written report of psychologist Dr. Malone establishes the incompetency of Charles, such report was marked but never admitted before the jury; the court accepted such testimony by stipulation of the parties. Upon a review of the complete record, we cannot say that the trial court abused its discretion in finding Charles Beavers competent as a witness. The record as a whole, and Charles' own testimony, provides sufficient evidence to support the trial court's finding. The testimony quoted above showed the witness's ability to understand questions and frame intelligent answers, as well as to recollect and communicate that recollection. That he was mentally retarded was not in itself grounds for establishing incompetency. See *Watson; Villarreal.* Furthermore, inconsistencies alone in a child's testimony do not render the witness incompetent. *Fields v. State,* 500 S.W.2d 500 (Tex.Cr.App.1973); *Smith v. State,* 410 S.W.2d 642 (Tex.Cr.App.1966).

The record also provides support for the trial court's finding of Charles' awareness of a moral responsibility to tell the truth, as partially shown by the testimony quoted above. The first ground of error is overruled.

By his second ground of error, appellant asserts he was denied effective assistance of counsel because of his attorney's failure to offer the psychologist's testimony before the jury on the issue of Charles' credibility. Appellant does not specify what "psychologist's testimony" should have been brought before the jury, but we assume that reference is being made to Dr. White's or Dr. Malone's reports attached to the records as a defense exhibit. While this exhibit was marked, the record does not establish that it was admitted as evidence before the jury. While the State asserts in its brief, without reference to the record, that the letter was admitted and was before the jury, we do not assume so from the record. Although the parties stipulated that, if present, Dr. White would have testified as in his letter, and the trial court stated that it utilized the

letter in ruling on Charles' competency, the exhibit was apparently not admitted before the jury. Appellant now contends that counsel should have offered it before the jury, and that such failure amounted to ineffective assistance of counsel to an unconstitutional degree. Specifically, appellant argues that the evidence should have been given to the jury to aid them in deciding the issue of Charles' credibility. The record itself clearly shows that during Charles' testimony, his mental deficiency and his capacity should have been thoroughly apparent to the jury. His limitations were underscored by the testimony of other witnesses. Other State's witnesses described him as "kind of strange," "not all there" mentally, and "slow." Charles Beavers himself in testimony indicated that he did not know the time, the day, the month, his correct age, or the color of a hat pointed out to him. On cross-examination, he agreed with appellant's counsel that he likes to please people and to answer questions the way people wanted them answered. He acknowledged that the prosecutor had gone over the questions with him a few minutes before. Appellant's attorney ably recounted all of this in closing argument, and the State's attorney candidly argued:

> We take our witnesses as we find them, and you heard about Charles and you heard Charles yourselves, and there's no point in mincing words about it: Charles is mentally retarded ... he's not crazy. He is mentally retarded. He's slow, but he knows what he is talking about...

Appellant states in effect that impeachment of Charles' credibility by expert witnesses to establish his mental retardation was not only proper, but that his counsel's failure to attempt such impeachment was a denial of his constitutional right to effective counsel.

The right to offer such evidence for impeachment purposes is neither well established nor clear. While cases have stated that feeblemindedness of a witness may be shown to impair or impeach his credibility, *Bouldin v. State*, 87 Tex.Cr.R. 419, 222 S.W. 555 (1920); *Ebers v. State*, 129 Tex.Cr.R. 287, 86 S.W.2d 761 (1935), no case has been cited nor has one been found that would allow such impeachment by expert testimony. Indeed, the expressions of the Texas Court of Criminal Appeals in *Hopkins v. State*, 480 S.W.2d 212 (Tex.Cr.App.1972), would cause counsel to believe such testimony to be barred: "[W]e have decided to align our law with that of those jurisdictions which do not permit psychiatric testimony for impeachment." 480 S.W.2d at 220.

Reviewing the record as a whole, appellant received reasonably effective counsel. Appellant's second ground of error is overruled.

By his third ground of error, appellant argues error by the trial court in failing to instruct the jury as to circumstantial evidence.

Appellant's trial request for such a charge was based upon his contention that Charles was an incompetent witness. The law is clear that where there is direct evidence of an accused's commission of the crime, an instruction on the law of circumstantial evidence is not necessary. *Perez v. State*, 590 S.W.2d 474 (Tex.Cr.App. 1979). Charles was found competent by the court and apparently found credible by the jury. No error is shown, and appellant's third ground of error is overruled.

By his fourth and last ground of error, appellant urges that the erroneous admission of photographs of the deceased's burned body denied him a fundamentally fair trial.

We note that appellant did not object to the photographs, except on grounds of duplicity, at the time they were admitted at trial. Thus, any error in their admission must be of a fundamental nature to be reviewed.

Appellant argues on appeal that the prejudicial nature of the photographs greatly outweighed their probative value, and that the prosecutor obviously introduced the exhibits solely to inflame the minds of the jury. The general rule is that if a verbal description of a body or scene is admissible, a photograph of the same is

admissible unless offered *solely* to inflame the minds of the jury. *Martin v. State*, 475 S.W.2d 265 (Tex.Cr.App.1972). Recently, in *Kelly v. State*, 621 S.W.2d 176 (Tex.Cr.App. 1981), a photograph of a deceased victim after she had been shot in the face with a shotgun was held admissible. Even more recently, the decision of *Baker v. State*, 625 S.W.2d 840 (Tex.App.—Amarillo 1981), held the decision of admissibility to be one grounded in the trial court's discretion, and reiterated the rule espoused in *Kelly*. While it was not raised as a ground of error, no abuse of discretion has been shown by admission of the photographs, nor would fundamental error appear. Appellant's fourth ground of error is overruled.

The judgment is affirmed.