Terry Wayne STEWART, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–95–00293–CR.

Court of Appeals of Texas,
San Antonio.

April 24, 1996.

Discretionary Review Refused Jan. 22, 1997.

---

Russ Henrichs, Dallas, for appellant.

Patricia Poppoff Noble, Assistant District Attorney, Dallas, for appellee.

Before LÓPEZ, STONE and DUNCAN, JJ.

## OPINION

LÓPEZ, Justice.

The trial court convicted appellant of sexual assault of a child, found two enhancement paragraphs to be true, and assessed punishment at forty years confinement. In one point of error, appellant challenges the sufficiency of the evidence to support the conviction. We reverse and remand for a judgment of acquittal.

Appellant was indicted for sexual abuse of a child, T.S., occurring on or about July 15,

1992. At the time of the offense, the Code of Criminal Procedure provided that a conviction for sexual assault could be sustained on the uncorroborated testimony of the victim if the victim informed another person of the alleged offense within six months of the date on which the offense allegedly occurred.[1] Act of May 26, 1983, 68th Leg., R.S., ch. 382, 1983 Gen.Laws 2090, 2091. It further provided that the outcry requirement did not apply if the victim was younger than fourteen years of age at the time of the alleged offense.[2] *Id.; see also Scoggan v. State,* 799 S.W.2d 679 (Tex.Crim.App.1990) (outcry or corroboration requirement applies to victim between fourteen and seventeen even though victim is too young to be accomplice). It is undisputed in the present case that T.S. did not make any outcry within six months of the date of the alleged offense. It is also uncontested that her testimony at trial is not corroborated. The issue, then, is whether there is sufficient evidence to show that T.S. was younger than fourteen years of age at the time of the alleged offense.

T.S. testified that she was born on August 2, 1978. For her to be included in the exception to the outcry requirement, the offense must have been committed before August 2, 1992. The following testimony relates to the date of the alleged offense:

Q  Back in the summertime, around the time that school started in 1992, did you have sexual intercourse with Terry Wayne Stewart?

A  Yes.

. . . .

Q  What grade were you in at the time this happened?

A  I was in fifth, I think.

. . . .

Q  Now, [T.S.], do you know exactly what the date was that this happened?

A  No.

Q  Do you have a point of reference or a time that you believed it happened?

A  I think it happened about September.

---

1. Article 38.07 now requires that the outcry be made within one year of the alleged offense. Tex.Code Crim.Proc.Ann. art. 38.07 (Vernon Supp. 1996).

2. Article 38.07 now provides that outcry is not required if the victim was younger than eighteen at the time of the alleged offense. Tex.Code Crim. Proc.Ann. art. 38.07 (Vernon Supp.1996).

Q  Why do you believe that?

A  Because it was near the time school started.

Q  How is it that you relate that to the time that school started?

A  Because it was in the summer.

Q  It was the end of summertime?

A  Yeah.

Q  And you remember that school was about to start?

A  Yeah.

Q  Had school started yet?

A  Yes.

Neither party addresses what standard of proof applies to the issue of proving the victim's age in this context.[3]  However, even if we assume that the State need only prove that the victim was younger than fourteen by a preponderance of the evidence, we must conclude that the evidence is insufficient. The great weight and preponderance of the testimony recited above shows that the offense occurred later than August 1, 1992. For example, T.S. testified that she thought the offense occurred in September, that it occurred near the time school started, that it occurred at the end of the summer, and that school had already started at that time. While there is no specific reference to when T.S.'s school started in 1992, her grandmother testified that in 1991 school started toward the end of August.

The State argues that it proved that the offense occurred when T.S. was thirteen years old because T.S. testified that she thought she was in fifth grade at the time: "usually a 5th grade student is younger than 14 years of age."  While the usual fifth grader may well be younger than fourteen, there is no evidence in our record showing that *T.S.* was younger than fourteen at the time *she* was in fifth grade.[4]  The State also em- phasizes T.S.'s testimony that the offense occurred in the summer.  Her specific testimony, however, was that it occurred at the *end* of the summer.  We reject the State's contention that the "end of summer" or "near the beginning of school" could mean June through August.  By common understanding, these points of reference could well include August (a time when T.S. was fourteen) but not June or July (a time when T.S. was thirteen).

Finally, the State argues that the prosecutor set a point of reference by directing T.S.'s attention to "that time in 1992 around July, August, September."  This statement does not constitute any proof that T.S. was younger than fourteen at the time of the offense.  First, during August and September, T.S. was fourteen years old, not thirteen. Second, the specific question asked by the prosecutor in relation to this time frame was who was living at a certain house on Catherine Street.  The offense in question did not even occur at that house.

Finally, the State urges that the trial court found appellant guilty "as charged in the indictment" and that the indictment alleges that the offense occurred on July 15, 1992.  We agree with the State that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony.  *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App.1982); *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim.App.1981).  It is free to accept or reject all or any part of the testimony of any witness.  *Penagraph v. State*, 623 S.W.2d at 343. It is not, however, free to make findings that are without support in the evidence.  There is simply no evidence in our record that the offense occurred on July 15, 1992.

Of course, the trial court did not necessarily find that the offense occurred on

---

3.  We think it clear that if the State was required to prove that the victim was younger than fourteen for purposes of obtaining a conviction for aggravated sexual assault, the standard of proof would be beyond a reasonable doubt.  *See* Tex.Penal Code Ann. § 22.021(a)(2)(B) (Vernon Supp.1996).  In that context, the victim's age is an element of the offense.  In the context of the present case, though, the victim's age does not relate to an element of the offense.

4.  Other evidence relating to T.S.'s age indicates that she was probably mistaken in her belief that she was in fifth grade at the time of the offense. She was born in 1978 and was sixteen years old at the time of trial.  She testified that she had dropped out of the ninth grade.  If she was in fifth grade in 1992, she would not have reached ninth grade by the time of trial in 1994.

July 15, 1992, nor was it required to so find. The indictment, as the State is no doubt aware, did not allege that the offense occurred on July 15, 1992. It alleged that the offense occurred "on *or about*" July 15, 1992. "On or about" is a legal phrase meaning any date anterior to the presentation of the indictment that is not barred by limitation. *Mireles v. State*, 901 S.W.2d 458, 459 (Tex. Crim.App.1995). The indictment in the present case was presented on August 19, 1994. The relevant statute of limitations was ten years. Thus, a finding that the offense occurred "on or about" July 15, 1992 would include any date between August 19, 1984 and August 19, 1994. This range clearly includes dates after T.S.'s fourteenth birthday on August 2, 1992. Thus, the trial court's conclusion that appellant was guilty as charged in the indictment does not mean that the court found that the offense occurred on July 15, 1992, or at a time when T.S. was thirteen years old.

We conclude that the State failed to prove that T.S. was younger than fourteen at the time of the offense. Thus, it was required either to prove that she made some outcry within six months or to corroborate her testimony with other evidence. This it failed to do. Without either outcry or corroboration, the evidence is insufficient to support the conviction.

The dissent asserts that the evidence in this case is sufficient to support the conviction because a defense exhibit contains a statement that appellant sexually assaulted T.S. in 1989, when T.S. was eleven years old. Neither brief mentions any assault having occurred in 1989 or when T.S. was eleven years old, nor is there any testimony in the record concerning any assault in 1989 or when T.S. was eleven years old.[5] Rather, all of the testimony offered by the State to prove or by the appellant to refute the charged offense focused on the summer of 1992. Further, the statement on which the dissent relies was introduced as a part of a packet of documents offered to show that

T.S. had manufactured the charges against appellant.

The evidence shows that T.S. was intimately involved with an older man and that she ran away to live with him. Appellant found her and returned her to her grandmother's home. T.S. again ran away and informed her family that if they tried to take her back, she would file charges against appellant. T.S. was again found and removed from her boyfriend's home and immediately filed charges against appellant. The main theme of the defense was that T.S. fabricated the charges against appellant as revenge for being taken away from her boyfriend. Defendant's exhibit two, which contains the statement regarding a 1989 assault, was introduced in the context of this defense:

THE COURT: When you said that you were going to file charges or something against them if they didn't quit bringing you back, what kinds of charges were you talking about filing?

[T.S.]: I was talking about the sexual charges because I was running away because he was doing that to me.

THE COURT: Anything further?

[PROSECUTOR]: Judge, I have one other question.

[The State then questioned T.S. as to whether she had threatened to bring charges because she was mad and elicited testimony that the prosecutor had to "bug her a lot" to get T.S. to come and testify. Defense counsel then conducted further examination.]

Q. [T.S.], I show you what's been marked as Defendant's Exhibit No. 2. That's a citation in the interest of [T.S.], a child, is that right?

A. Yes.

Q. Does that indicate that?

A. Uh-huh.

Q. This is—contains your statement, does it not?

A. Uh-huh.

5. There is testimony that T.S. began to exhibit a personality change in 1990 or 1991, but this evidence was related to the fact that in late 1990 the house she lived in burned down, a great-

grandmother whom she loved very much died, and her grandmother with whom she lived underwent major surgery.

Q. On the front page—and other documents also—on the front page, it is true here it does say that this referral was received on July 15th, 1994; is that correct?

A. Uh-huh.

Q. Is that the very day that you were taken away from Eddie?

A. No, I was taken away on the 14th at— real late at night.

Q. On the 14th they take you away from Eddie and on the 15th you filed these charges?

A. Yes.

Q. That's when you told the people at LeTot?

A. Yes.

[DEFENSE COUNSEL]: Judge, we offer Defendant's Exhibit No. 2, which is basically the legal documents.

The dissent has taken an isolated statement out of the middle of a fourteen page documentary exhibit offered to show T.S.'s motive for filing charges against appellant. Neither the State nor the defense ever contended that the statement contained therein was offered for the truth of the matter asserted. Indeed, had it been so offered, it could have been subject to a hearsay objection. Neither the State nor the defense ever made any reference in testimony, in argument to the trier of fact, or in their briefs on appeal, to the substance of the statement or the dates contained therein. It is obvious that both parties and the trier of fact considered the exhibit to have been admitted merely to demonstrate the timing of the allegations against appellant and a possible motive for fabrication. Indeed, there is no indication in the record that the trier of fact was aware that the exhibit contained a statement setting the date of the offense in 1989. Certainly neither the State nor the defense made any reference to it in the trial court, just as they have made no reference to it in this court.

The dissent's position also raises serious due process concerns. The dissent would affirm a conviction for an offense that it concludes occurred in 1989 even though all of the testimony and argument contained in the statement of facts relate solely to offenses alleged to have occurred in 1992 and 1994.[6] These are the only alleged offenses that were actually litigated. "It is axiomatic that a conviction upon a charge not made or *upon a charge not tried* constitutes a denial of due process." *Jackson v. Virginia*, 443 U.S. 307, 314, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979) (emphasis added).

This case is distinguishable from *Rankin v. State*, No. 1019–94, —— S.W.2d —— (Tex. Crim.App. January 10, 1996), in which the Court of Criminal Appeals upheld a conviction for an offense other than the offense the State intended to prove. The appellant in *Rankin* was charged with possession of a controlled substance. The State introduced evidence that a rock of crack cocaine was found underneath the seat of a patrol car in which appellant had been sitting. Appellant testified that he had possessed a rock of crack cocaine earlier that same day, but that the rock found in the patrol car was not his. The State argued to the jury that it could convict appellant based on his judicial admission that he had possessed cocaine earlier in the day. The Court of Criminal Appeals upheld the conviction because the earlier possession of cocaine was not an extraneous offense, but was an act "shown in the charging papers." Further, appellant's judicial admission proved every element set out in the indictment and the charge.

*Rankin* is distinguishable from the present case in a number of respects. First, the evidence there at issue was affirmative testimony offered for the truth of the matter asserted, not just a portion of a documentary exhibit offered to demonstrate that a statement was made. Second, the possession for which appellant was convicted occurred on the same day as the possession alleged by the State. While this is not dispositive, due process is not implicated in the same manner by such a short time frame as it is when the offense charged and the offense proved are separated by a period of three years. Finally, the evidence showing the earlier possession was specifically pointed out to the trier

---

**6.** Appellant was granted a directed verdict as to the alleged 1994 offense.

of fact in argument as a basis for conviction. The State in the present case never requested that the trier of fact convict appellant for an offense occurring in 1989 rather than the alleged offense in 1992.

For all the foregoing reasons, we cannot conclude that the evidence is sufficient to support appellant's conviction. Appellant's sole point of error is sustained.

The judgment of the trial court is reversed and the cause is remanded to the trial court with directions to enter a judgment of acquittal.

DUNCAN, J., dissents.

DUNCAN, Justice, dissenting.

Because I disagree with the majority's analysis and result in this case, I respectfully dissent.

## FACTS

T.S. testified that the first time Stewart assaulted her was at his home on Church Street. When this first assault occurred, however, is unclear from the record. T.S. testified variously—"[b]ack in the summertime, around the time that school started in 1992"; when she was "in fifth [grade], I think"; when she was "at Lida Hoe Elementary"; she didn't "know exactly what date this happened" but she thought it "happened about September" "[b]ecause it was near the time school started" and "because it was in the summer," "at the end of summertime"; "school was about to start"; "school had started"; "it was still warm outside." According to T.S., she told no one about the assault until "about a year" later because she was afraid of Stewart. Also, according to T.S., this first assault was followed by a second assault shortly thereafter at her home on Catherine Street. Then, according to T.S., Stewart moved away for "two years" and the assaults stopped.

Stewart returned to live at T.S.'s home during the summer of 1993 while he was recuperating from gunshot wounds. According to T.S., the assaults began again within a month of Stewart's return and continued through the end of 1993. Although T.S. was afraid of Stewart, she told her paternal grandmother—Stewart's mother—about the assaults that December, around Christmas. Her grandmother did not believe her. To escape the abuse, T.S. ran away—first in January 1994 and then several times between February and May 1994. Before running away the first time, T.S. told her twenty-eight year old boyfriend, James Edward Fuller, that Stewart had assaulted her. Fuller was sympathetic and, after the first time, when T.S. ran away, she ran to Fuller's apartment.

The last time T.S. was picked up, in mid-July 1994, at Eddie's apartment, she told the authorities about the abuse and was not returned to her grandmother's home. She was instead placed in the Le Tot Center. When she was being placed in Le Tot, T.S. told her grandmother and Stewart that if they continued to take her home, she would press charges for Stewart's assaults. In response to a question by the court as to the kind of charges she threatened to file, T.S. testified that she "was talking about the sexual charges because [she] was running away because [Stewart] was doing that to [her]."

At trial, Stewart offered into evidence the suit papers filed by the State on July 15, 1994. Stewart's counsel did not seek to limit his offer, and no objection was lodged by the State. Attached to these suit papers were the statements of the Child Protective Services caseworker, Betsy Lyde, and T.S. T.S.'s statement states that she was first molested by Stewart in 1989 when she was eleven years old.

After several weeks at Le Tot, T.S. was placed in Buckner Children's Home. While at a movie, T.S. ran away and called her mother in Quinlan, Texas. After staying with her mother for a few weeks, T.S. moved in with Fuller and his mother in Dallas. At the time of trial, T.S. was four months pregnant with Fuller's child. Both she and Fuller testified that they would marry if T.S. were old enough.

In my view, the record establishes the following chronology of events: [1]

| Date | T.S.'s Age | T.S.'s School/Grade Level | Other Events |
|---|---|---|---|
| 08/02/78 | 0 | | T.S. born (SF 16) |
| 08/09/89 | 11 | Lida Hoe Elem.; 5th grade (SF 23; DX 2, Ex. 2) | Stewart's first assault on T.S. if T.S.'s testimony that Stewart first assaulted her when she was in fifth grade at the Lida Hoe Elementary School is credited (SF 23); according to Stewart's mother, it was in the fifth grade that she noticed a decisive change in T.S.'s personality but she attributed it to the death of T.S.'s maternal grandmother, her own surgery, and the fire that destroyed their Eighth Street home (SF 105), despite the fact that these events did not occur until the latter part of 1990 (DX 4) |
| 08/00/90 | 12 | Lida Hoe Elem.; 6th grade (*See* SF 23; DX 2, Ex. 2) | |
| 10/10/90 | 12 | | Eighth Street home destroyed by fire (DX 4) |
| 10/17/90 | 12 | | Death of T.S.'s maternal grandmother (DX 4) |
| 12/00/90 | 12 | | Stewart's mother's surgery (DX 4) |
| 08/00/91 | 13 | W.E. Greiner Mid. Sch.; 7th grade (*See* DX 3) | |
| 01/00/92 | | | Flacey's daughter begins attending W.E. Greiner Middle School with T.S., and it is about this time (during their seventh and eighth grade years) that Flacey noticed a distinct change in T.S.'s personality (SF 76) |
| 07/15/92 | 13 | | Alleged offense (TR 3) |
| 08/00/92 | 14 | W.E. Greiner Mid. Sch.; 8th grade (DX 3) | |
| 08/09/92 | 14 | | Stewart first assaulted T.S. in late summer or early fall of 1992 if T.S.'s testimony that Stewart first assaulted her in the late summer or early fall of 1992 is credited (SF 21, 24–25) |
| 06/12/93 | 14 | | Stewart shot (DX 4) |

1. In light of the disparities between the majority and this dissent's views of the record and briefs, I have included record references in this opinion.

| Date | T.S.'s Age | T.S.'s School/Grade Level | Other Events |
|------|-----------|---------------------------|--------------|
| 06/26/93 | 15 | | Stewart released from hospital and returned to Catherine Street home to recuperate (DX 4); according to T.S., assaults resume within about a month of Stewart's return (SF 31–32) |
| 08/00/93 | 15 | Health Magnet Sch.; 9th grade (*See* DX 3–4) | After T.S. began ninth grade and until January 1994, she helped Stewart with his nighttime repossession work (SF 33–35); during this time, Stewart continued to molest her (SF 33, 35–36) |
| 12/00/93 | 15 | | Around Christmas, T.S. told her grandmother that Stewart was assaulting her (SF 33); before running away, T.S. told Fuller of Stewart's assaults (SF 36–37) |
| 01/04/94 | 15 | Sunset High Sch.; 9th grade (DX 3–4) | T.S. scheduled enrollment date at Sunset and the first time she runs away (DX 4) |
| 01/10/94 | 15 | | T.S. enrolled at Sunset (DX 4) |
| 02/17/94 | 15 | | T.S. runs away for the second time (DX 4) |
| 02/28/94 | 15 | Flacey's Home School (SF 71; DX 3) | |
| 03/19/94 | 15 | | T.S. runs away for the third time (DX 4) |
| 05/12/94 | 15 | | T.S. returns home (DX 4) |
| 05/23/94 | 15 | | T.S. runs away for the fourth time (DX 4) |
| 07/15/94 | 15 | | T.S. picked up at Fuller's apartment and put in Le Tot (DX 4); T.S. tells authorities about sexual assaults by Stewart and gives statement indicating abuse began in 1989 when she was in fifth grade (DX 2, Ex. 1–2); SAPCR filed (DX 2) |
| 07/19/94 | 15 | | T.S. meets with Officer Nelson (SF 10) |
| 08/12/94 | 16 | | Because T.S.'s time at Le Tot expired and the authorities did not want to return her to her grandmother's home, T.S. was transferred to Buckner's Children's Home (DX 2, Ex. 1 at 2) |
| 08/19/94 | 16 | | Indictment presented |

| Date | T.S.'s Age | T.S.'s School/Grade Level | Other Events |
|------|-----------|---------------------------|--------------|
| 08/20/94 | 16 | | T.S. runs away from Buckner's Children's Home (DX 4) |
| 12/15/94 | 16 | | Trial begins |

---

### DEFENDANT'S EXHIBIT 2

The majority criticizes this dissent for relying upon T.S.'s statement, which is attached to Defendant's Exhibit 2, and in which T.S. states that Stewart first assaulted her in 1989 when she was eleven years old. According to the majority, there is no testimony to support this aspect of T.S.'s statement, and it was not briefed. I disagree. As demonstrated by the chronology set forth above, T.S.'s statement that Stewart first assaulted her in 1989 when she was eleven years old is consistent with her testimony that the first assault occurred when she was in the fifth grade. And T.S.'s testimony in this respect is corroborated in some measure by T.S.'s grandmother's testimony that she first noticed a change in T.S.'s personality when she was in fifth grade. I further disagree with the majority's conclusion that the trier of fact was not aware of the possibility that the assaults began when T.S. was in the fifth grade, that is in 1989–90 when T.S. was eleven years old. To the contrary, the experienced trial judge, sitting as the trier of fact, indicated he was aware of the discrepancy in T.S.'s testimony by his questioning of both T.S.'s grandmother and Flacey as to whether the change in T.S.'s personality occurred when she was in fifth grade. SF 73, 75–78. Finally, the State argues that Stewart's conviction is supportable by T.S.'s testimony that the assaults began when she was in the fifth grade. State's Brief at 6–7.[2]

The majority further criticizes this dissent's reference to the statement because "it could have been subject to a hearsay objection." It is clear, however, that Stewart has not brought forward a point of error complaining that T.S.'s statement was inadmissible hearsay; Stewart was the proponent of

Defendant's Exhibit 2, and his offer was not limited to Stewart's fabrication defense; and the State did not object to the exhibit as inadmissible hearsay. SF 65–66. Accordingly, whether the exhibit contains hearsay is irrelevant; the statement is evidence with probative value—just as are the statements of T.S.'s grandmother and her friend Mrs. Flacey, which were also offered without limitation and admitted without objection. *See* TEX.R.CRIM.EVID. 802.

### STANDARD OF REVIEW

Stewart was charged with sexually assaulting his niece, T.S., "on or about" July 15, 1992. As the majority states, "on or about" means any date before presentation of the indictment, provided the offense would not then be barred by the relevant statute of limitations. *Mireles v. State*, 901 S.W.2d 458, 459 (Tex.Crim.App.1995). Accordingly, the trier of fact was authorized to find Stewart guilty of the crime charged if it found, beyond a reasonable doubt, that Stewart sexually assaulted T.S. at any time between August 19, 1984 and August 19, 1994. However, pursuant to the outcry statute in effect between 1983 and 1993, Stewart's conviction for sexual assault is "supportable" by T.S.'s uncorroborated testimony only if T.S. was less than fourteen at the time of the offense. *See and compare* Act of June 17, 1983, 68th Leg., R.S., ch. 382, 1983 Gen.Laws 2090, 2091 *with* TEX.CODE CRIM.PROC. art. 38.07 (Vernon Supp.1996).

In his appeal, Stewart "moves for dismissal" because, he alleges, the evidence is insufficient to support the trial court's finding that the offense occurred on or about July 15, 1992. Stewart's brief thus complains of the legal sufficiency of the evidence. Under a legal sufficiency test, we are charged with

---

2. Because evidence, discussions between the trial judge and witnesses, and briefing indicating the offense may have occurred in 1989, I do not

agree either that the charge was "not tried" or that Stewart's conviction raises "serious due process concerns."

reviewing all of the evidence in the light most favorable to the verdict, and therefore resolving all credibility determinations in favor of the verdict; the ultimate question to be answered in conducting this review is whether a rational trier of fact could have found the appellant guilty of the crime charged beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). I agree with the majority, however, that the outcry statute does not establish the victim's age as an element of the offense. But I disagree both with its suggestion that the State was required to prove that the victim was younger than fourteen by a preponderance of the evidence and with its apparent holding that we are authorized to reverse the conviction if the State failed to do so.

The outcry statute in effect in 1992 was codified as article 38.07 of the Code of Criminal Procedure. *See* TEX.CODE CRIM.PROC. ANN. art. 38.07 (Vernon 1979). The repealed article was located in a section entitled "Evidence in Criminal Actions." *See id.* at 4. More particularly, however, article 38.07 is located right after article 38.06, subsection 2, which deals with the competency of child witnesses, and right in the middle of articles 38.06 through 38.13, all of which deal with the competency of persons to testify. *See id.* at art. 38.06–.13. Because of article 38.07's location and subject matter, I believe it effectuated a legislative determination of a special rule of competency, consent, and complicity/trustworthiness for child victims of sexual assaults: If a sexual assault victim was less than fourteen years of age at the time of the offense, the victim was deemed competent to testify regarding the assault without corroboration; but if the victim was over fourteen years of age, the victim was not considered competent to testify absent corroborating evidence, whether it be the fact of an outcry within a specified period or some other evidence tending to connect the defendant with the crime charged. *Cf. Vickery v. State,* 566 S.W.2d 624, 627 (Tex.Crim.App.1978) (articles 38.07 and 38.14 in pari materia; therefore, article 38.14's accomplice witness corroboration requirement applies only if article 38.07 does not apply).

Because I view the question as one in the nature of competency, I believe Stewart, rather than the State, bore the burden in the trial court of raising and proving, by a preponderance of the evidence, that T.S. was not competent to testify without corroboration. *See Beavers v. State,* 634 S.W.2d 893, 895 (Tex.App.—Houston [1st. Dist.] 1982, pet. ref'd); *Lujan v. State,* 626 S.W.2d 854, 860 (Tex.App.—San Antonio 1981, pet. ref'd). And the proper standard of review of the trial court's competency ruling is the abuse of discretion standard. *See Villarreal v. State,* 576 S.W.2d 51, 57 (Tex.Crim.App. 1978), *cert. denied,* 444 U.S. 885, 100 S.Ct. 176, 62 L.Ed.2d 114 (1979); *see also Lujan,* 626 S.W.2d at 860–61. Under the abuse of discretion standard, the trial court's ruling may be reversed only "when it appears that the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion." *DuBose v. State,* 915 S.W.2d 493, 498 (Tex.Crim.App.1996).

In short, to say, as article 38.07 did (and does), that a conviction is "supportable" by certain testimony is to say that the testimony is competent and may be considered in reviewing the sufficiency of the evidence; the testimony is not "no evidence." *Cf. Ex parte Reynolds,* 588 S.W.2d 900, 902 (Tex. Crim.App.1979), *cert. denied,* 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980) (if insufficient evidence to corroborate accomplice witness testimony, evidence is legally insufficient and judgment of acquittal must be rendered). If, on the other hand, the requirements of article 38.07 are not met, the evidence is considered "no evidence," and it may not be used to support the conviction. But the threshold issue to determining Stewart's legal sufficiency complaint is the propriety of the trial court's implicit ruling that T.S. was younger than fourteen at the time of the offense, and that ruling should be reviewed under an abuse of discretion standard. To reference the preponderance standard applicable in the trial court, as the majority does, confuses the burden of proof at trial and the standard of review on appeal. And to shift the burden of showing

competency to the State is, in my view, simply erroneous.

### DISCUSSION

Stewart's complaint should fail for two reasons. First, there is no indication in the record that he preserved the competency issue in the trial court. *See* TEX.R.APP.P. 52(a); *Beavers,* 634 S.W.2d at 895–96; *Lujan,* 626 S.W.2d at 860. Second, even if the issue had been raised with the trial judge, T.S.'s testimony was internally conflicting, and it is up to the trial judge sitting as the trier of fact—not this court—to resolve the conflicts. *See DuBose,* 915 S.W.2d at 496–98. In so doing, he might reasonably could have credited T.S.'s testimony that she was first assaulted when she in the fifth grade—a point in time at which T.S. was younger than fourteen. Accordingly, I would overrule Stewart's legal sufficiency complaint and affirm the judgment.

