TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00570-CR







Bart Gonzalez Castro, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0975129, HONORABLE JON WISSER, JUDGE PRESIDING






 Appellant Bart Gonzalez Castro was indicted for intentionally and knowingly
causing the death of Sean Figarelle by shooting him with a firearm. See Tex. Penal Code
§ 19.02(b) (West 1999). A jury found him guilty and assessed punishment at 55 years'
imprisonment and a $10,000 fine. Appellant alleges the trial court erred in (1) admitting into
evidence photographic exhibits he claims were irrelevant and inflammatory, (2) allowing a police
officer to testify about wounds of which he had no personal knowledge, and (3) allowing
testimony from a witness appellant claims was incompetent. We will overrule appellant's issues
and affirm the conviction.


Factual Background

 In the evening of October 22, 1997, Sean Figarelle, appellant, and appellant's
brother, Lorenzo Castro, were drinking at appellant's house. At about 10:30 or 11:00 p.m.,
Figarelle called Jimmy Spinks and asked for a "throwaway" or "throwdown" gun because a
situation had arisen and he felt threatened. Spinks said it sounded like Figarelle had been
drinking, and he told Figarelle to go home and sleep it off. At about 2:00 a.m., Figarelle called
to apologize and said things were fine.

 At about 2:22 a.m., appellant called Michael Miracle and said Figarelle had stolen
his wallet. Appellant asked for a gun, and Miracle told appellant to calm down and go to sleep. 
Appellant continued to ask for a gun and Miracle eventually told him to use a bat instead of a gun. 
At about 3:45 a.m., appellant called Joe Moreno, asked for a gun, and said Figarelle had stolen
his wallet. Moreno, who lived about 30 minutes away, said his gun was in his truck and hung
up. Neither Miracle nor Moreno believed Figarelle had taken the wallet; both believed it was
probably taken by appellant's common-law wife, who had taken money from appellant in the past.

 In the very early morning of October 23, Moreno and his wife woke to the sound
of appellant and Lorenzo banging on their door and asking for the gun. Moreno told them the gun
was in his truck and gave them some gas money. Moreno said he did not know they had taken
the gun until the next morning, when he heard about the shooting and saw the gun was gone from
the truck. 

 Victor Ledesma was outside his brother-in-law's apartment across the courtyard
from Figarelle's apartment at about 4:30 a.m. on October 23 when he saw appellant and Lorenzo
knock on Figarelle's door. Ledesma saw something white, like a towel or a t-shirt, wrapped
around appellant's hand. When Figarelle's door opened, appellant raised his hands and fired a
gun two or three times. Ledesma saw appellant and Lorenzo run away, and saw Figarelle stagger 
and fall down. Figarelle's next-door neighbor testified that he heard loud knocking on Figarelle's
door at about 5:00 a.m. and heard someone inside Figarelle's apartment get up and go to the door. 
Seconds after he heard the door open, he heard two gunshots and looked out the window to see
a man running away.

 Appellant admitted he shot Figarelle, but claimed it was in self-defense. He said
Figarelle stole appellant's wallet and some valium from appellant's house during the evening of
October 22. He said he went to Figarelle's apartment to demand it back, bringing the gun for
protection. Other witnesses testified Figarelle was much larger than appellant and had boasted
about killing people before moving to Austin. Appellant said he knocked on Figarelle's door and
demanded back his wallet. Appellant said Figarelle responded, "What are you going to do about
it," and charged at him. Appellant insisted he fired one shot in self-defense, intending to fire over
Figarelle's head, and that the gun discharged the second time by accident. He denied the gun was
wrapped in a towel.


Photographic Exhibits

 Appellant claims the trial court erred when it admitted into evidence exhibits 1
through 5, 15, 29, and 32 through 38 because they were irrelevant and highly prejudicial. We
disagree.

 At the outset, we note that appellant initially objected to exhibit 36 as being
prejudicial, but later explicitly stated he had no objection to the admission of exhibit 36. 
Therefore, we will overrule appellant's issue as it applies to exhibit 36.

 At trial, appellant objected to the introduction of photographic exhibits 1 through
5, 15, 29, 32, 37, and 38, arguing their inflammatory and prejudicial natures outweighed any
probative value. (1) He argued exhibits 4, 5, 15, 29, and 32 were irrelevant and objected to exhibits
4 and 5 as being cumulative. The State argued for the exhibits' admittance and attempted to
establish the exhibits' relevance and probative value. The trial court overruled appellant's
objections, finding the probative value outweighed any unfair prejudice, and admitted the exhibits
into evidence. 


I. Standard of Review

 Our review of a trial court's admission of evidence is conducted under an abuse of
discretion standard. Santellan v. State, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997); Poole v.
State, 974 S.W.2d 892, 897 (Tex. App.--Austin 1998, no pet.). We will not disturb a trial court's
ruling on the admissibility of evidence if the trial court's decision lies within "the zone of
reasonable disagreement." Poole, 974 S.W.2d at 897. All relevant evidence, unless otherwise
barred by Constitution, statute, or rule, is admissible at trial. Tex. R. Evid. 402. Relevant
evidence is that which tends to make a fact at issue more or less probable. Tex. R. Evid. 401. 

 When a defendant objects to the admission of evidence under Rule 403 of the Texas
Rules of Evidence, the trial court is required to weigh the evidence's probative value against any
danger of unfair prejudice. Santellan, 939 S.W.2d at 169; Poole, 974 S.W.2d at 897. Only when
the probative value of the evidence is substantially outweighed by the potential for unfair prejudice
should the evidence be excluded, and relevant evidence carries a presumption that it is more
probative than prejudicial. Santellan, 939 S.W.2d at 169; Poole, 974 S.W.2d at 897. Factors
to be considered when weighing probative value against prejudice are the number of exhibits
sought to be introduced, the level of detail or gruesomeness of the photographs, the size of the
photographs, whether they are black and white or color, whether they are close-ups, whether they
show a naked or clothed body, the availability of other proof, and other circumstances peculiar
to the specific case. Santellan, 939 S.W.2d at 172. Simply because a photographic exhibit is
disturbing or somewhat gruesome due to the injuries inflicted upon the victim (such as blood,
gunshot wounds, bruising, cuts, or the fact that the victim is dead) does not mean the photograph
should automatically be excluded as unfairly prejudicial. Williams v. State, 958 S.W.2d 186, 195
(Tex. Crim. App. 1997); Santellan, 939 S.W.2d at 173; Sonnier v. State, 913 S.W.2d 511, 519
(Tex. Crim. App. 1995). Generally, in the case of photographic evidence, if verbal testimony
describing the subject of a photograph is relevant and admissible, the photograph is also
admissible. Williams, 958 S.W.2d at 195 (also holding testimony about and photographs of crime
scenes are generally relevant); Dusek v. State, 978 S.W.2d 129, 136 (Tex. App.--Austin 1998, pet.
ref'd). Photographs taken during an autopsy generally are admissible, unless they show mutilation
to the victim's body due to the autopsy itself. Rojas, 986 S.W.2d at 249; Santellan, 939 S.W.2d
at 172.

 While a trial court is required to weigh the probative value of evidence against any
prejudicial effect once a defendant makes a Rule 403 objection, it is not required sua sponte to
verbalize any findings or conclusions arising out of the balancing test for the record. Williams,
958 S.W.2d at 195; Poole, 974 S.W.2d at 897. If a rule 403 objection is raised and the trial court
overrules the objection, we assume the trial court properly performed the balancing test and found
any danger of unfair prejudice did not substantially outweigh the probative value. Williams, 958
S.W.2d at 195-96; Poole, 974 S.W.2d at 897. Absent an explicit refusal by the trial court, we
will not assume that a silent record reflects that the court did not perform the balancing test
properly. Rojas v. State, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998); Williams, 958 S.W.2d
at 195-96; Santellan, 939 S.W.2d at 173. 


II. Relevance

 Appellant argues that all of the photographic exhibits to which he objected were
irrelevant and should have been excluded from evidence. Specifically, appellant states the trial
court "abused its discretion by allowing photograph 32 into the record because the photo does not
by itself prove that appellant committed the act of murder." This is not the proper test for
relevance. As noted above, evidence is relevant and carries a presumption of admissibility if it
tends to make a fact at issue more or less probable; it need not by itself prove all facts at issue. 
Tex. R. Evid. 401; Santellan, 939 S.W.2d at 169; Poole, 974 S.W.2d at 897. 

 When appellant objected to exhibits 29 and 32 as being irrelevant, the State
explained the exhibits showed the crime scene's location and corroborated other testimony. When
he objected to exhibits 4 and 5 as cumulative to exhibits 29 and 32, the State explained that exhibit
5 showed a different angle of Figarelle's body and the apartment complex than exhibit 29 and
showed a towel lying near Figarelle's head, and that exhibit 4 was a clearer photograph of
Figarelle's face than was exhibit 32. Upon appellant's relevance objection to exhibits 1, 2, 3, 15,
25, 37, and 38, the testifying medical examiner explained the exhibits in question would aid him
in his testimony to the jury. 

 We do not find the trial court clearly abused its discretion in finding the exhibits
were relevant. See Santellan, 939 S.W.2d at 172; Poole, 974 S.W.2d at 897. We will overrule
appellant's issue as far as it claims the exhibits were irrelevant and should have been excluded on
that basis.


III. Unfair Prejudicial Effect

 Appellant also objected to the introduction of all the above-referenced photographs,
arguing their inflammatory and prejudicial natures outweighed any probative value. At each rule
403 objection, the trial court held brief conferences out of the jury's hearing, during which the
State attempted to establish their relevance and probative value. The trial court overruled
appellant's objection to exhibits 1, 2, 3, 15, 25, 29, 32, 37, and 38 with a finding that the
exhibits' probative value outweighed any unfair prejudice and simply overruled appellant's
objection to exhibits 4 and 5. Appellant did not ask that the court explicate for the record its
reasons for admitting the exhibits.

 The testimony that accompanied the exhibits was given by the chief investigating
police officer and the chief medical examiner, consisted of descriptions of the crime scene and
Figarelle's wounds and cause of death, and was relevant and admissible. See Williams, 958
S.W.2d at 195; Dusek, 978 S.W.2d at 136. Exhibit 15, to which appellant objected strenuously,
showed Figarelle's body lying on an autopsy table, but no autopsy mutilation was visible, nor did
any such mutilation appear in exhibits 35, 37, or 38. See Rojas, 986 S.W.2d at 249; Santellan,
939 S.W.2d at 172.

 Reviewing the trial court's decisions to admit the exhibits over appellant's
objections, we are unable to say the trial court abused its discretion in admitting the evidence. 
The trial court performed the required balancing tests and explicitly found the probative value of
exhibits 1, 2, 3, 15, 29, 35, 37, and 38 outweighed any prejudicial effect. While the trial court
did not make any such explicit rule 403 finding when overruling appellant's objection to exhibits
4 and 5, we presume the trial court properly performed the balancing test and found the probative
value outweighed any prejudicial effect. Williams, 958 S.W.2d at 195-96; Poole, 974 S.W.2d
at 897. We overrule appellant's argument that the trial court erred in allowing into evidence the
photographic exhibits.


Officer Fuentes's Testimony Appellant argues the trial court erred in allowing Officer Fuentes, the lead
investigator into Figarelle's death, to testify about wounds about which he had no personal
knowledge. We disagree.

 Generally, a witness may not testify about facts of which he has no personal
knowledge. Tex. R. Evid. 602. However, an expert witness may base his testimony on such
facts, and the facts on which he relies in forming his opinion need not be admissible into evidence. 
Tex. R. Evid. 703. Whether a witness qualifies as an expert is left to the trial court's sound
discretion and there are no hard and fast rules explaining what level of knowledge is needed to
so qualify. Austin v. State, 794 S.W.2d 408, 411 (Tex. App.--Austin 1990, pet. ref'd). A witness
can acquire "special knowledge" of the subject on which he will testify, and thus become qualified
as an expert, through experience, training, education, skill, or knowledge. Lawson v. State, 854
S.W.2d 234, 239 (Tex. App.--Austin 1993, pet. ref'd); Austin, 794 S.W.2d at 411. We will not
overturn a trial court's decision to allow a witness to testify as an expert absent a clear showing
of abuse of discretion. Steve v. State, 614 S.W.2d 137, 139 (Tex. Crim. App. 1981); Lawson,
854 S.W.2d at 239; Austin, 794 S.W.2d at 411.

 Officer Fuentes testified he had been a certified peace officer for more than 20
years. He said he had experience investigating shootings, evaluating blood spatter and drag
patterns, taking witness statements, and determining if a victim was dead at the scene. Fuentes
testified he had not personally observed the wounds in Figarelle's wrist, but had seen photographs
of the wounds. (2) Appellant objected when Fuentes was asked to describe the wrist wounds and
how it appeared Figarelle was holding his hands over his chest when he was shot because Fuentes
did not have personal knowledge of the wounds. The State argued Fuentes should be allowed to
testify based on his investigation as lead investigating officer. The trial court overruled
appellant's objection, finding Fuentes was "an expert witness in this narrow area" and was
qualified to testify based on facts of which he did not have personal knowledge and might not
otherwise be admissible.

 Absent a clear showing that the trial court abused its discretion by finding Fuentes
was expertly qualified to testify about the wrist wounds, we will not disturb that finding. Austin,
794 S.W.2d at 411. Appellant has not made that showing. Furthermore, the medical examiner
testified later in the trial to essentially the same facts as had Fuentes, describing the position of
the entrance and exit wounds in Figarelle's wrist, the angle of the bullet's path, and the apparent
alignment of Figarelle's wrist and hands over his chest at the time of the gunshot. Because
essentially the same testimony to which appellant objected came in with no objection later in the
trial, any error in allowing Fuentes's testimony was harmless. Willis v. State, 785 S.W.2d 378,
383 (Tex. Crim. App. 1989); Poole, 889 S.W.2d at 899. We overrule appellant's claim that the
trial court erred in allowing Fuentes to testify as to the wrist wounds of which he had no personal
knowledge.



Victor Ledesma's Testimony

 Appellant claims the trial court erred in allowing Ledesma, an eyewitness to the
shooting, to testify because Ledesma was incompetent. We disagree.

 To be considered competent to testify, a potential witness must have been able to 
observe intelligently the events to which he will testify, be able to recall those events, and be able
to communicate his memory of those events adequately at trial. Watson v. State, 596 S.W.2d
867, 870-71 (Tex. Crim. App. 1980); Hollinger v. State, 911 S.W.2d 35, 38-39 (Tex. App.--Tyler
1995, pet. ref'd); Reyna v. State, 797 S.W.2d 189, 191-92 (Tex. App.--Corpus Christi 1990, no
pet.). The ability to communicate recollections adequately means the potential witness can
understand the questions asked of him, frame intelligent answers, and understand his moral
responsibility to tell the truth. Watson, 596 S.W.2d at 870-71; Hollinger, 911 S.W.2d at 38-39. 
A potential witness is presumed to be competent to testify; the opponent of the testimony bears
the burden of proving otherwise. Tex. R. Evid. 601(a); Miller v. State, 442 S.W.2d 340, 348
(Tex. Crim. App. 1969); Beavers v. State, 634 S.W.2d 893, 895 (Tex. App.--Houston [1st Dist.]
1982, pet. ref'd). 

 Whether a witness is competent to testify is a question for the trial court. 
Broussard v. State, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995); Hernandez v. State, 643
S.W.2d 397, 400 (Tex. Crim. App. 1982); Reyna, 797 S.W.2d at 191; Beavers, 634 S.W.2d at
895. We will not disturb a trial court's decision on the competency of a witness absent a clear
showing of an abuse of discretion. Broussard, 910 S.W.2d at 960; Hernandez, 643 S.W.2d at
400; Hollinger, 911 S.W.2d at 38. In reviewing a trial court's competency ruling, we consider
the witness's entire testimony, given both at trial before the jury and in the competency
examination. Hernandez, 643 S.W.2d at 400; Reyna, 797 S.W.2d at 191; Beavers, 634 S.W.2d
at 895.

 The State admits Ledesma suffers from some kind of mental illness or other
problem. Before being sworn in and in the presence of the jury, Ledesma chattered nonsensically,
claiming the State did a brain scan on him and that he was Elvis Presley. After he was sworn in,
he claimed again to be Elvis, and said he was "hotter than the FBI." Appellant asked that the jury
be excused while the court conducted a competency hearing and noted Ledesma had maintained
a constant stream of chatter and nonsense since entering the courtroom, behaving inappropriately,
yelling his name, breathing loudly, and saying he was Elvis and that he belonged to the State. 
Ledesma then stated he had worked for Lady Bird Johnson. Appellant objected to Ledesma's
competency, and the court asked the State to question him so the court could evaluate his
competency. 

 Still outside of the jury's hearing, Ledesma said he knew the difference between
the truth and a lie, the truth "is the truth and nothing but the truth so help you God," it is wrong
to tell a lie and good to tell the truth, and he would answer all questions asked of him truthfully. 
The State explained to him that he had to follow certain rules of court, including waiting to speak
until a question was asked, and Ledesma agreed to follow those rules. It appears from the record
that Ledesma settled down and began to answer the State's questions coherently and with
intelligence and understanding. He stated he knew appellant and Lorenzo, but when asked, was
unable to pick them out of the courtroom. The State showed him an exhibit including a
photograph of appellant taken around the time of the shooting, and Ledesma identified appellant
by name. (3) He did the same with a photograph of Lorenzo. Ledesma testified he saw appellant
and Lorenzo go to Figarelle's door and saw Lorenzo knock on the door. Ledesma said he hid
behind a small tree, and saw appellant raise his hands and shoot Figarelle two or three times when
the door opened. 

 Appellant objected to Ledesma's competency, pointing to the outbursts and
inappropriate behavior. The trial court noted Ledesma appeared to have problems, but ruled he
possessed the "intellect to relate the transaction that he's going to be interrogated upon," and
overruled appellant's objection. Appellant also objected he would be unable to cross-examine
Ledesma thoroughly, as jurors might feel he was taking advantage of a disabled person. The
court overruled his objection.

 Once the jury returned, Ledesma testified to essentially the same facts as he related
during the preceding competency examination. He had no outbursts after being asked to answer
truthfully, other than to explain he was relating "the truth and nothing but the truth so help me
God," he witnessed the shooting "at the wrong time at the wrong place and it was true," and he
"believe[d] in the flag of the United States of America, one nation under God." 

 While we note, as did the trial court, that Ledesma appears to have mental
difficulties, we are unable to hold the court abused its discretion in finding he was competent to
testify. Ledesma said he knew the difference between the truth and a lie, said he would testify
truthfully about the events he witnessed, seemed to remember what he witnessed, seemed to
understand the questions asked of him, and answered those questions clearly and coherently. We
do not find the trial court abused its discretion by finding Ledesma possessed sufficient intellect
to be a competent witness.

 We overrule appellant's issues on appeal and affirm the trial court's judgment.



 


 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: November 18, 1999

Do Not Publish
1. Exhibits 1 and 2 show entrance and exit gunshot wounds to Figarelle's wrist. Exhibit 3
shows a probe through Figarelle's wrist, showing the angle of the gunshot. Exhibit 4 is a close-up
of Figarelle's bloodied face as it appeared at the scene. Exhibits 5 and 29 show Figarelle's body
as it appeared at the scene. Exhibit 15 is a photograph of Figarelle's body lying on an autopsy
table. Exhibit 32 shows Figarelle's bloodied face and most of Figarelle's upper torso, including
a gunshot wound to the chest. Exhibits 35, 37, and 38 are autopsy photographs showing wounds
and powder burns on Figarelle's skin and finger. 
2. Exhibits 1, 2, and 3, showing entrance and exit points and the angle of the bullet's path
through Figarelle's wrist.
3. The exhibit Ledesma viewed, exhibit 39, consisted of two photographs of appellant taken
upon his arrest, and his name and other information. Appellant objected to Ledesma viewing a
photograph that listed appellant's name, but Ledesma then testified he could not read. Fuentes
testified that appellant's appearance at trial was quite different because appellant had cut his hair
and shaved his beard, both of which were quite long at the time of his arrest.



ell a lie and good to tell the truth, and he would answer all questions asked of him truthfully. 
The State explained to him that he had to follow certain rules of court, including waiting to speak
until a question was asked, and Ledesma agreed to follow those rules. It appears from the record
that Ledesma settled down and began to answer the State's questions coherently and with
intelligence and understanding. He stated he knew appellant and Lorenzo, but when asked, was
unable to pick them out of the courtroom. The State showed him an exhibit including a
photograph of appellant taken around the time of the shooting, and Ledesma identified appellant
by name. (3) He did the same with a photograph of Lorenzo. Ledesma testified he saw appellant
and Lorenzo go to Figarelle's door and saw Lorenzo knock on the door. Ledesma said he hid
behind a small tree, and saw appellant raise his hands and shoot Figarelle two or three times when
the door opened. 

 Appellant objected to Ledesma's competency, pointing to the outbursts and
inappropriate behavior. The trial court noted Ledesma appeared to have problems, but ruled he
possessed the "intellect to relate the transaction that he's going to be interrogated upon," and
overruled appellant's objection. Appellant also objected he would be unable to cross-examine
Ledesma thoroughly, as j