Windell BROUSSARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 71745.

Court of Criminal Appeals of Texas, En Banc.

Oct. 25, 1995.

Rehearing Denied Dec. 6, 1995.

James A. Delee, Port Arthur, for appellant.

John R. DeWitt, Assistant District Attorney, Beaumont, Robert A. Huttash, State's Atty., Austin, for the State.

*OPINION*

KELLER, Judge.

In June of 1993, appellant was convicted of capital murder, namely, the double murder of Dianna Broussard and her son, Corey Harris, which was committed in April 1992. The trial court submitted to the jury the special issues set out in Article 37.071(b), of the Texas Code of Criminal Procedure.[1] In accordance with the jury's answers to those issues, the trial court assessed the appellant's punishment at death. Article 37.071(h) provides direct appeal to this Court. Appellant raises twelve points of error. We affirm.

In point of error nine appellant contends that the evidence was insufficient to sustain a verdict of guilty to capital murder. He claims Tocarra Harris, the primary witness for the State, "had her mind filled with the idea that her stepfather was the perpetrator." He speculates that the nine year old witness' testimony was "programmed," but offers no evidence to support this claim. He further describes other unfavorable evidence

as a mere "smattering of background and periphery items."

A sufficiency review requires that, while viewing the evidence in the light most favorable to the verdict, we ask whether any rational trier of fact could have found beyond a reasonable doubt all of the elements being challenged. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Nelson v. State*, 848 S.W.2d 126, 131 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 100, 126 L.Ed.2d 66 (1993).

Tocarra Harris, appellant's stepdaughter, testified that she was sleeping in the same bed with her mother, Dianna Broussard, and her brother, Corey Harris, when she awoke to the sound of screaming. She said the screams were coming from her mother and brother and that they were being stabbed by appellant. Appellant then began to stab Tocarra. She heard her mother and brother scream "Windell, Stop." Tocarra also testified that one side of her assailant's face was illuminated by the bathroom light. She recognized the face as Windell Broussard. She said he continued to stab her as her mother and brother ran out of the house.

Dianna Broussard's mother testified that Dianna had separated from appellant and was about to file for divorce. She said Dianna left appellant because he beat her. Dianna's uncle, Elton Harris, testified that about a week before the killings he witnessed an argument between Dianna and appellant's girlfriend. When appellant arrived on the scene, Dianna told him to leave. Appellant's response was that "before he would leave her he'd rather see her dead before anybody else would have her again." Elton Harris also testified that at Dianna's request, he had installed a new padlock on her door, that she had lost the key, and that one week before the murders he saw appellant in her house.

Appellant's aunt testified that at about 11:00 or 11:30 p.m. on the night of the murd-

---

1. All references to Articles are to the Texas Code of Criminal Procedure unless otherwise provid-

ed.

ders appellant came home wearing only his underwear. She said he "rushed in—like something happened" and jumped up and down saying "I did something." When she asked him, "Did you kill somebody?", he said, "Yes. I killed somebody."

Appellant's friend Cornell Bush testified that appellant asked him to drive him to his wife's house on the night of the murders. He said something was "going on" between them and that appellant "wanted to see if she was with some guy or something like that." On the way there, appellant tried to persuade Bush to lend him his car. After driving past the victims' house, Bush and appellant returned to Bush's home. He said appellant left there at about 9:00 or 9:30.

An I.D. technician with the Port Arthur Police testified that the victims were found lying in the yard, and that there was blood all over the house. A pack of Kool cigarettes, the brand appellant smoked, was found on the bed along with the missing key to Dianna Harris' padlock. A cap bearing the logo of appellant's employer was also found at the scene. The pathologist who examined the bodies found that each victim had died from a stab wound to the heart. He testified that they could have lived for 5–10 minutes after the wounds were inflicted. Officer Jimmy Clark testified that when he arrived at the scene around 11:00 or 11:30, "a little bloody girl" (Tocarra Harris) was sitting just inside the door.

Given the eyewitness testimony of the one surviving victim, and the large amount of evidence corroborating her account of the events leading to this trial, we find that a rational trier of fact could conclude beyond a reasonable doubt that appellant killed Dianna Broussard and Corey Harris. Therefore, point of error nine is overruled.

In point of error ten appellant challenges the sufficiency of the evidence to sustain a sentence of death. Appellant addresses both punishment issues in this single point.

Appellant complains first that the evidence is insufficient to support the jury's affirmative answer to the future dangerousness issue. Once again, when conducting a review of the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have affirmatively answered the punishment issue beyond a reasonable doubt. *Barnes v. State*, 876 S.W.2d 316, 322 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994); *Valdez v. State*, 776 S.W.2d 162, 166 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1989).

■ A jury may consider, but is not limited to, the following factors when evaluating the sufficiency of the evidence to support an affirmative answer to the second punishment issue:

1. the circumstances of the capital offense, including the defendant's state of mind and whether he was working alone or with other parties;

2. the calculated nature of the defendant's acts;

3. the forethought and deliberateness exhibited by the crime's execution;

4. the existence of a prior criminal record and the severity of the prior crimes;

5. the defendant's age and personal circumstances at the time of the commission of the offense;

6. whether the defendant was acting under duress or the domination of another at the time of the commission of the offense;

7. psychiatric evidence; and,

8. character evidence.

*Dinkins v. State*, 894 S.W.2d 330, 358 (Tex. Crim.App.1995); *Keeton v. State*, 724 S.W.2d 58, 61 (Tex.Crim.App.1987). No one factor is dispositive, and the jury's affirmative answer may withstand a sufficiency challenge notwithstanding the lack of evidence relating to one or more of these factors. *Dinkins v. State*, 894 at 358; *Vuong v. State*, 830 S.W.2d

929, 935 (Tex.Crim.App.1992), *cert. denied,* 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992).

■ Appellant's threatening words, his apparent secretion of the key to his wife's padlock, and his behavior shortly before the murders took place show that the crime was planned. Entering the victims' home at night, appellant carried out his intention to "see [Dianna] dead" by stabbing not only Dianna, but her two children as they lay in bed asleep. Appellant conceived and carried out the plan completely on his own.

The evidence also reveals a long history of criminal violence. In 1979, after pleading guilty to an indictment charging him with aggravated kidnapping and aggravated robbery, appellant was convicted of kidnapping and sentenced to 10 years confinement. In 1987, on a plea bargain to a two count indictment charging him with aggravated kidnapping and aggravated assault, appellant was convicted of Class A assault and sentenced to 180 days. Appellant was convicted again in 1990 for the offense of robbery and sentenced to 9½ years. In 1991, he received a sentence of 20 days on misdemeanor assault for hitting Dianna Broussard in the face with his fist. Three Port Arthur police officers testified that appellant's reputation for being peaceful and law abiding was bad. Dianna Harris' mother testified that Dianna was seeking a divorce because appellant beat her. For these reasons, we find that the evidence supports the jury's finding of future dangerousness.

Appellant's second complaint in point of error ten concerns the jury's negative finding on the issue of mitigating circumstances. Appellant claims the testimony of several witnesses, including his former supervisor and his supervisor's wife, a former co-worker, and appellant's sister, demonstrates that a life sentence was warranted. These witnesses offered their opinion that appellant was a decent, hardworking, and trustworthy person. Appellant also called several prison guards who testified that, to their knowledge, appellant had not been a troublemaker in prison.

■ Because the weighing of "mitigating evidence" is a subjective determination undertaken by each individual juror, this Court will not review such evidence for sufficiency. *Colella v. State,* 908 S.W.2d 437 at 448 (Tex. Crim.App.1995). Point of error ten is overruled.

In point of error eight appellant avers that the trial court erred in overruling his objection to the jury's charge on guilt/innocence. Specifically, appellant argues that he was entitled to a charge on the lesser included offense of murder.

■ In order to be entitled to a charge on a lesser included offense, a defendant must show first that the lesser offense is included within the proof necessary to establish the offense charged; and second, that some evidence exists in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App.1985). The State claims and we agree that appellant has failed to satisfy the second prong of this test.

Appellant questions Tocarra Harris' account of the events leading to this trial, and claims the evidence was inadequate to show that both murders were committed by the same person. He again speculates that Tocarra's testimony may have been "programmed" by the State, but offers no evidence to support his contention that there was more than one assailant. Finding nothing in Tocarra's testimony or anywhere else in the record to support this argument, we overrule point of error eight.

■ Appellant complains in points of error six and seven that the trial court erred in denying his challenges for cause to two prospective jurors. Appellant has failed to preserve these points for review. In order to preserve error on a challenge for cause, the defendant must exhaust his peremptory challenges, request additional peremptory chal-

lenges, identify a member of the jury as objectionable, and claim that he would have struck the juror with a peremptory challenge. *Nelson v. State,* 848 S.W.2d 126, 134 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 100, 126 L.Ed.2d 66 (1993); *Demouchette v. State,* 731 S.W.2d 75, 83 (Tex.Crim.App.1986), *cert. denied,* 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1986).

■ In the case at bar, eleven veniremen had been seated on the jury when appellant exhausted his fifteen peremptory challenges. At that point he made a request for three more peremptory challenges; his request was denied. The next three veniremen called were struck by the State. When the next venireman, Larry Gaiennie, was accepted by the State, the judge stated that Gaiennie would be seated as the twelfth juror unless appellant could show "why he is an insufficient juror to justify granting an additional challenge." Appellant made no objection but merely replied, "Your honor, we will accept Mr. Gaiennie." By failing to identify Mr. Gaiennie as objectionable, appellant waived his right to complain on appeal that the trial judge erroneously overruled his challenges for cause. Accordingly, points of error six and seven are overruled.

In point of error three appellant complains that the trial court erred in overruling his request for three additional peremptory challenges. As set out above, by failing to identify an objectionable juror against whom he would have exercised such a challenge, appellant failed to demonstrate his need and therefore has preserved nothing for our review. Point of error three is overruled.

■ In point of error twelve appellant asserts that the trial court erred in denying his motion to quash the jury panel. Appellant claims the panel was tainted by pre-trial publicity concerning his prior conviction for robbery.

Article 35.07, V.A.C.C.P., provides that a party may challenge an array only on the ground that the officer summoning the jury has wilfully summoned jurors with a view to securing a conviction or acquittal. *Cooks v. State,* 844 S.W.2d 697 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1992). Since appellant's motion did not raise the proper grounds for such a challenge to the array, the trial court was correct to overrule the motion. Point of error twelve is overruled.

Appellant asserts in his fourth point of error that the trial court erred by replacing an excused venireman with an alternate. Specifically, appellant complains that because the jury had not yet been sworn, the trial judge should have selected a replacement from the jurors remaining on the original panel list, rather than using an alternate. Appellant objected at trial to replacing the disabled juror with the alternate.

Twelve jurors and one alternate had been selected in this case, but not sworn. At the conclusion of jury selection, the judge ordered the bailiff to excuse the rest of the panel and notify those thirteen jurors to appear for trial. The following Wednesday, the trial court determined that one juror was disabled due to work pressures. The judge granted that juror's request to be excused from service and replaced him with the selected alternate. Appellant *does not contest* the propriety of the dismissal of the venireman.

■ The trial court relied on Article 36.29(b) in replacing the disabled juror with the alternate. That article provides that when a juror becomes disabled in a case in which the State seeks the death penalty, if an alternate juror has been selected, the alternate shall replace the disabled juror. Article 36.29, however, is not applicable until the jury is sworn. *Williams v. State,* 631 S.W.2d 955, 957 (Tex.Crim.App.1982).

In *Williams,* after the jury was selected but before it was sworn, a venireman became disabled and was dismissed. The defendant moved for a mistrial and for the calling of an entirely new panel. The trial court overruled the motion for mistrial and allowed the parties to select the twelfth juror from a new

panel of five taken from the central jury panel. We held in *Williams* that although no statutory provision dealt specifically with the narrow circumstance presented, the trial court was not required to declare a mistrial and the court had authority to complete the jury in the manner employed. Appellant argues that *Williams* provides the only proper remedy when a juror is dismissed after selection and before being sworn.

■ In *Williams,* no alternate jurors had been selected. The trial court's options were, thus, limited to declaring a mistrial or replacing the disabled venireman from a new panel. In the present case, because an alternate juror was available, the trial court had the further possible option of using the alternate to replace the disabled venireman. Faced with the need to complete the jury, and having no specific statutory directive, the trial court chose an acceptable option by replacing the disabled venireman with a venireman who had already been qualified and accepted by both parties. We find no error in the court's action.

Even if we were to hold that the court erred, any error would be harmless. Had the court simply waited until swearing the jury to dismiss the disabled venireman, the court would have been absolutely required to replace him with the alternate. Under these circumstances, we can conceive of no possible harm to appellant. Point of error four is overruled.

■ In point of error five appellant asserts that the trial court erred in sustaining the State's challenge for cause to venireman Chambers based on her feelings regarding the death penalty. The State claims that the trial court did not abuse its discretion in granting the challenge for cause because Chambers' feelings about the death penalty would have prevented or substantially impaired the performance of her duties as a juror in accordance with her oath and the instructions of the court. *See Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Knox v. State,* 744 S.W.2d 53, 58 (1987), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2834, 100 L.Ed.2d 934 (1987). We apply a deferential standard of review to a trial court's ruling granting a state's challenge for cause. *Coleman v. State,* 881 S.W.2d 344, 348 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 763, 130 L.Ed.2d 660 (1994); *Moody v. State,* 827 S.W.2d 875, 886 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992).

■ The record reflects that venireman Chambers vacillated in her responses to questions concerning the death penalty and her ability to follow the law despite her reservations about it. *See Barefield v. State,* 784 S.W.2d 38, 44 (Tex.Crim.App.1989), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1989). Asked by appellant if her personal feelings would affect her ability to vote "yes" to the issue of guilt and "no" to the issue of mitigation, she stated that she "just couldn't do it." When asked whether her personal feelings would impair her ability to follow the oath, she repeatedly gave conflicting answers:

PROSECUTOR: Okay. Do you feel like those personal feelings would prevent or substantially impair you from following your oath as a juror?

CHAMBERS: No.

PROSECUTOR: No, they wouldn't be involved at all? Because you told me yes three times.

CHAMBERS: I know. I know. I know.

PROSECUTOR: And you keep vacillating on me ...

During the State's final examination Chambers again wavered, but concluded by stating that her personal feelings would prevent her from following her oath:

PROSECUTOR: That's okay. We are getting down to the last time. Those personal feelings, would they prevent or substantially impair you from following your oath?

CHAMBERS: They would prevent me.

PROSECUTOR: They would prevent you?

CHAMBERS: Yeah.

PROSECUTOR: From following your oath as a juror?

CHAMBERS: Uh-huh.

PROSECUTOR: And you are not going to change your mind?

CHAMBERS: No. No.

PROSECUTOR: Okay. You will hold to your guns and this is how you feel?

CHAMBERS: This is how I feel.

Because the trial court is in the best position to evaluate the responses a venireman gives, we afford due deference to its decision. *Montoya v. State,* 810 S.W.2d 160, 169 (Tex. Crim.App.1989), *cert. denied,* 502 U.S. 961, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991); *Barefield* 784 S.W.2d at 44. Taking into consideration the totality of venireman Chambers' voir dire examination, we find that the trial court did not abuse its discretion in sustaining the State's challenge for cause. *See Cordova v. State,* 733 S.W.2d 175, 183 (Tex.Crim. App.1987), *cert. denied,* 487 U.S. 1240, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1987). Point of error five is overruled.

In point of error eleven appellant claims the trial court erred in overruling his objection to prejudicial jury argument. He contends the State brought harmful unsworn testimony before the jury when it compared him to a dormant volcano.

During closing argument at the punishment phase, the State sought to illustrate that defense witness testimony drew an incomplete picture of appellant's personality. After opening with the story of Pompeii, the prosecutor compared accounts of appellant's peaceful disposition to periods of volcanic dormancy:

PROSECUTOR: And now all his friends get up here and say he's dormant. They paint a pretty picture—

DEFENSE COUNSEL: Objection, Your Honor. He's arguing outside the record.

COURT: Overruled, sir.

PROSECUTOR: They paint a pretty picture of Mr. Broussard that is not the case.

They obviously are not seeing the dark side of this man, the side that you all saw in the evidence that was presented the last time he erupted.

Will he erupt again? Yes. When will he erupt again? Who knows? But he will. He's done it five times already that we've proven to you.

In *Burns v. State,* 556 S.W.2d 270, 285 (Tex.Crim.App.1977), *cert. denied,* 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977), the prosecutor referred to the defendant as an "animal". Because the evidence in that case showed that the appellant had brutally tortured and murdered a 58-year old man, we held that the term "was not an improper deduction from the evidence." We find that the same is true here. In comparing appellant to a volcano, the prosecutor merely used an analogy to emphasize and explain evidence. That evidence supported a conclusion that while appellant might behave peaceably at times, he also had a great propensity for violence. This Court has held that jury argument which constitutes a summation of the evidence is proper. *Hughes v. State,* 878 S.W.2d 142, 157–58 (Tex.Crim.App.1992) (op. on reh'g.); *Gomez v. State,* 704 S.W.2d 770, 771 (Tex.Crim.App.1985). Therefore, point of error eleven is overruled.

In point of error two appellant contends that the trial court erred in refusing to charge the jury that the State has the burden of proof on the issue of mitigating circumstances. Specifically, appellant contends that the State must prove there are no mitigating factors sufficient to warrant imposition of a life sentence instead of the death penalty.

This Court has refused to assign a burden of proof on the issue of mitigating circumstances. *See Penry v. State,* 903 S.W.2d 715 (Tex.Crim.App.1995). Citing *Barnes v. State,* 876 S.W.2d 316, 330 (Tex.Crim.App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994), we held that "neither legislation nor constitution places a burden of proof upon the State to negate the

existence of mitigating evidence." Point of error two is overruled.

Appellant asserts in point of error one that the trial court erred in refusing to allow his expert to conduct a psychiatric examination of Tocarra and of her medical records. To support this assertion, appellant broadly invokes the right to effective assistance of counsel under the United States and Texas Constitutions. He contends that in denying counsel's "agent" an interview, the trial court violated counsel's right of access to State's witnesses.

Before trial, appellant moved the trial court to allow appellant's psychiatrist to examine the nine-year-old witness and her medical records to determine her competency. The motion was denied. Appellant does not contend and the record does not reflect that he was denied an opportunity to question the witness himself. At trial, appellant failed to raise the issues of competency and undue influence during his cross-examination of the witness.

 Tex.R.Crim.Evid. 601(a)(2) places the power to determine a witness' competency into the hands of the trial judge. A ruling by the trial court will not be disturbed upon review unless an abuse of discretion is shown. *Clark v. State*, 558 S.W.2d 887, 890 (Tex.Crim.App.1977). Under Rule 601, a child is considered competent to testify unless it appears to the Court that she does not possess sufficient intellect to relate the transaction about which she will testify. Rule 601 does not require, nor does it empower a judge to force a witness to undergo psychiatric evaluation for the purpose of a competency determination. Accordingly, point of error one is overruled.

The judgment is affirmed.

CLINTON, J., concurs in the result.