TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-95-00574-CR







Edward Butler, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 95-3238, HONORABLE FRED MOORE, JUDGE PRESIDING






PER CURIAM

 Edward Butler was tried for aggravated sexual assault of a child and two counts of
indecency with a child. The jury found him guilty of indecency with a child by contact and, finding an
enhancement paragraph true, assessed sentence at thirty-three years in prison. He complains on appeal
about the court allowing a five-year-old child to testify and permitting testimony regarding his jail
classification and a prior bad act. We will affirm the judgment.

 By point of error one, Butler contends that the trial court erred by allowing an incompetent
child witness to testify. A child is considered competent to testify unless, upon court examination, the court
determines that the child lacks sufficient intellect to relate the transaction about which the child will testify. 
Tex. R. Crim. Evid. 601(a)(2); Broussard v. State, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995), cert.
denied, 117 S. Ct. 87 (1996). We review the decision to allow the child to testify for an abuse of
discretion. Id. We will reverse only if an abuse of discretion appears upon a review of the entire record,
including the witness's trial testimony. Id.

 The trial court examined the child witness outside the jury's presence before she testified. 
The court asked her age and her kindergarten teacher's name (Ms. Woods), among other questions. The
following exchange then occurred:


Q: . . . Do you know what telling the truth is?


A: (Witness nodded head affirmatively.)


Q: If you go to school and Ms. Woods--if somebody told Ms. Woods a lie or a fib,
would they get in trouble?


A: Yeah.


Q: Yeah. What would Ms. Woods do?


A: I don't know.


Q: You don't know. But would Ms. Woods do something to them if she asked them
and they didn't tell her the truth? Think so? Would they get in trouble if they
didn't tell Ms. Woods the truth?


A: (Witness nodded head affirmatively.)


Q: Yeah, okay. I think you've been in one of these courtrooms before? Maybe not
this one, but have you been in a courtroom before?


A: (Witness shook head negatively.)


. . . 



Q: Ms. Wetzel and Mr. Sawyer are going to have some questions they want to ask
you. Can you promise me when they ask you those questions you'll tell the truth;
can you promise me that?


A: (Witness nodded head affirmatively.)


Q: And you're nodding yes. We're having a hard time hearing. Maybe think when
you--can you talk a little bit louder maybe?


A: (Witness nodded head negatively.)


Q: Okay. Would you rather sit or stand up when you talk to us?


A: I want to sit.


Q: You want to sit, okay. You think maybe you could scoot forward a little bit when
you talk to us?


A: (Witness nodded head affirmatively.)


Q: Do you know what a microphone is? Do you know what a microphone is?


A: (Witness shook head negatively.)


The colloquy continued for a while, after which the court decided to allow her to testify before the jury. 
When she testified, she talked about details such as where and how Edward touched her. She also said
she did not know the answer to some questions and responded negatively to others. 

 Looking at the testimony as a whole, we conclude that the child witness showed sufficient
intellect to talk about someone touching her improperly. She recalled details of her life apart from the
incident in question and had consistent names for various body parts. She claimed an understanding of right
and wrong and did not always say "yes" to questions by the trial court or the State. The trial court did not
abuse its discretion by finding her competent to testify. We overrule point one.


 With his remaining points of error, Butler challenges the court's decision to allow certain
testimony at the punishment phase. Butler challenges the testimony of Travis County Sheriff's Department
Lieutenant Kirt Hildreth regarding Butler's jail classification (point two) and the testimony of Austin Police
Department Sergeant Troy Gay about a prior bad act (point three). At punishment, the court can admit
relevant evidence regarding the prior criminal record of the defendant, his general reputation, his character,
an opinion regarding his character, and any other evidence of an extraneous crime or bad act that is shown
beyond a reasonable doubt by evidence to have been committed by the defendant. Tex. Code Crim. Proc.
Ann. art. 37.07, § 3(a) (West Supp. 1997). (1) We review the admission of evidence for an abuse of
discretion. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

 Butler contends that Hildreth's testimony was irrelevant. Hildreth classified inmates upon
their arrival and during their incarceration. On the initial classification -- based on charge, criminal history,
and previous jail behavior -- Butler was placed in "maximum" classification. Butler's behavior in jail placed
him in Level 1, under maximum supervision, which included being dressed in orange at all times and being
leg-ironed, handcuffed, and escorted by two officers when being transported. Hildreth testified that, while
waiting in a holding cell for a tuberculosis test, Butler assaulted two other inmates. Hildreth testified on
cross-examination that he was unaware whether Butler was suffering from severe mental illness during his
incarceration. Butler contends that the classification evidence is irrelevant because it did not show that he
was more or less likely to have committed the offense or that he should be sentenced to more or less time.

 We conclude that the court did not err by finding this evidence relevant. A broader range
of evidence is relevant at punishment than at guilt/innocence because the goal is the determination of the
appropriate punishment rather than any fact of consequence. Miller-El v. State, 782 S.W.2d 892, 895-96
(Tex. Crim. App. 1990). The range is governed by policy rather than logical relevance. Id. The legislature
decided by enacting section 3(a) that evidence regarding the defendant's character and reputation can be
relevant when determining the appropriate punishment. For example, the court of criminal appeals
accordingly concluded that evidence of membership in a drug-distributing gang is relevant to show a murder
defendant's character. Beasley v. State, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); Anderson v.
State, 901 S.W.2d 946, 950 Tex. Crim. App. 1995). Evidence of gang membership is admissible so long
as the jury is provided with evidence of the defendant's membership and the gang's bad acts, the jury is
not required to determine whether the defendant committed the bad acts of the gang, and the jury is only
asked to consider the reputation or character of the accused. Beasley, 902 S.W.2d at 457. Similarly,
Hildreth testified below to Butler's classification and how the classifications were decided, but did not
disclose what Butler had done to earn such classification. We conclude that the trial court did not err by
finding this evidence of Butler's reputation relevant to his sentencing. We overrule point two.

 Butler also contends that Gay's testimony was irrelevant. Gay conducted an unrecorded,
noncustodial interview of Butler shortly after the victim's outcry. Gay testified that Butler told him that, at
age seventeen, he had put his finger in the vagina of a twelve-year-old. Butler complains that the State did
not prove beyond a reasonable doubt that he committed the bad act because the State presented no
evidence to corroborate Butler's out-of-court statement. An extrajudicial confession to the indicted offense
must be corroborated by some proof of the corpus delicti to provide the proof beyond a reasonable doubt
necessary to gain conviction. Gribble v. State, 808 S.W.2d 65, 70-71 (Tex. Crim. App. 1990), cert.
denied, 501 U.S. 1232 (1991). Butler reasons that, without corroboration, the State as a matter of law
did not prove he committed the confessed extraneous offense beyond a reasonable doubt. He contends
that the confession therefore was not admissible under article 37.07, § 3(a), which requires such proof of
extraneous offenses. 

 We find no authority regarding this novel argument. Corroboration is necessary at the
guilt/innocence phase to satisfy the common-law rule of corpus delicti, requiring some proof tending to
show that the crime was committed. Fisher v. State, 851 S.W.2d 298, 302-03 (Tex. Crim. App. 1993). 
"[T]he essential purpose of the corroboration requirement is to assure that no person be convicted without
some independent evidence showing that the very crime to which he confessed was actually committed." 
Gribble, 808 S.W.2d at 71; see also Wheeler, Invitation to Murder? Corpus Delicti, Texas Style, 30
S. Tex. L. Rev. 267, 270 (1989). We find no authority applying this rule to require corroboration of
confessions to extraneous offenses for which the confessor is not indicted. The concerns for ensuring that
people are convicted only for actual offenses do not apply to extraneous, unindicted offenses. The
admission of the confession will, at most, prod the jury toward assessing a longer sentence; it will not, of
itself, cause the confessor to be convicted or have the offense grade enhanced. The statute on punishment-stage proof requires proof of the extraneous offense beyond a reasonable doubt but does not mandate
corroboration of confessions. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a). We conclude that, during
the punishment phase, the State need not corroborate testimony about confessions to extraneous offenses
for the confessions to be admissible. 

 We therefore find no error in the court allowing testimony about the confession to the
extraneous offense without requiring corroboration of the confession. The court instructed the jury to
consider the confession only if it believed beyond a reasonable doubt that he committed the confessed
offense. The jury was entitled to conclude that Butler must have committed the confessed offense because
he would not have confessed to committing a similar offense if he had not committed it. We overrule point
three.

 We affirm the judgment.



Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: April 17, 1997

Do Not Publish
1. Section 3(a) was amended after the trial. The amendment was to subsections not relevant to this
appeal.



iate punishment. For example, the court of criminal appeals
accordingly concluded that evidence of membership in a drug-distributing gang is relevant to show a murder
defendant's character. Beasley v. State, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); Anderson v.
State, 901 S.W.2d 946, 950 Tex. Crim. App. 1995). Evidence of gang membership is admissible so long
as the jury is provided with evidence of the defendant's membership and the gang's bad acts, the jury is
not required to determine whether the defendant committed the bad acts of the gang, and the jury is only
asked to consider the reputation or character of the accused. Beasley, 902 S.W.2d at 457. Similarly,
Hildreth testified below to Butler's classification and how the classifications were decided, but did not
disclose what Butler had done to earn such classification. We conclude that the trial court did not err by
finding this evidence of Butler's reputation relevant to his sentencing. We overrule point two.

 Butler also contends that Gay's testimony was irrelevant. Gay conducted an unrecorded,
noncustodial interview of Butler shortly after the victim's outcry. Gay testified that Butler told him that, at
age seventeen, he had put his finger in the vagina of a twelve-year-old. Butler complains that the State did
not prove beyond a reasonable doubt that he committed the bad act because the State presented no
evidence to corroborate Butler's out-of-court statement. An extrajudicial confession to the indicted offense
must be corroborated by some proof of the corpus delicti to provide the proof beyond a reasonable doubt
necessary to gain conviction. Gribble v. State, 808 S.W.2d 65, 70-71 (Tex. Crim. App. 1990), cert.
denied, 501 U.S. 1232 (1991). Butler reasons that, without corroboration, the State as a matter of law
did not prove he committed the confessed extraneous offense beyond a reasonable doubt. He contends
that the confession therefore was not admissible under article 37.07, § 3(a), which requires such proof of
extraneous offenses. 

 We find no authority regarding this novel argument. Corroboration is necessary at the
guilt/innocence phase to satisfy the common-law rule of corpus delicti, requiring some proof tending to
show that the crime was committed. Fisher v. State, 851 S.W.2d 298, 302-03 (Tex. Crim. App. 1993). 
"[T]he essential purpose of the corroboration requirement is to assure that no person be convicted without
some independent evidence showing that the very crime to which he confessed was actually committed." 
Gribble, 808 S.W.2d at 71; see also Wheeler, Invitation to Murder? Corpus Delicti, Texas Style, 30
S. Tex. L. Rev. 267, 270 (1989). We find no authority applying this rule to require corroboration of
confessions to extraneous offenses for which the confessor is not indicted. The concerns for ensuring that
people are convicted only for actual offenses do not apply to extraneous, unindicted offenses. The
admission of the confession will, at most, prod the jury toward assessing a longer sentence; it will not, of
itself, cause the confessor to be convicted or have the offense grade enhanced. The statute on punishment-stage proof requires proof of the extraneous offense beyond a reasonable doubt but does not mandate
corroboration of confessions. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a). We conclude that, during
the punishment phase, the State need not corroborate testimony about confessions to extraneous offenses
for the confessions to be admissible. 

 We therefore find no error in the court allowing testimony about the confession to the
extraneous offense without requiring corroboration of the confession. The court instructed the jury to
consider the confession only if it believed beyond a reasonable doubt that he committed the confessed
offense. The jury was entitled to conclude that Butler must have committed the confessed offense because
he would not have confessed to committing a similar offense if he had not committed it. We overrule point
three.

 We affirm the judgment.



Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: April 17, 1997

Do Not Publish
1. Section 3(a) was amended after the tri