

IN THE
TENTH COURT OF APPEALS

No. 10-08-00135-CR

ANDREW DEBBS,

                                                            Appellant

 v.

THE STATE OF TEXAS,

                                                            Appellee

From the 413th District Court
Johnson County, Texas
Trial Court No. F40146

MEMORANDUM  OPINION

Andrew Debbs was convicted of five counts of aggravated sexual assault and three counts of indecency with a child.  TEX. PENAL CODE ANN. §§ 22.021, 21.11 (Vernon 2003 & Supp. 2008).  He was sentenced to life in prison on each count.  Because the trial court did not err in overruling his *Batson* challenge and did not err in finding the child victim competent to testify, and because the evidence was factually sufficient to support Debbs's convictions, the trial court's judgment is affirmed.

## FACTUAL BACKGROUND

V.H. was five years old in February of 2006 when she and her mother, Tabitha, moved in with her "nanny," Gail, and her nanny's boyfriend, Debbs. In April of 2006, V.H.'s uncle, Zachariah, who had also moved into the house, noticed something peculiar. He walked by Debbs's room and noticed him sitting in a chair with V.H. standing about 6 inches in front of Debbs's knees, which were spread apart. Debbs was wearing a pair of cut-off sweats and an open bathrobe. Because V.H. had been sexually assaulted before, Zachariah asked Tabitha to speak with V.H. When Tabitha asked V.H. if anyone had touched her, V.H. responded, "Tell my Nanny [Debbs] is going to have to get out." V.H. then confirmed that Debbs touched her "no-no spots," a phrase used to mean her vagina, bottom, and breasts.

Tabitha called 9-1-1 and a sheriff's deputy was dispatched to the house. V.H. was taken to the Child Advocacy Center where she made a statement about the assaults by Debbs. A few days later, V.H's father, Mathew, took V.H. to Cook Children's Medical Center for an evaluation by the CARE team, which is a child abuse program. While being evaluated, V.H. stated that "…[Debbs] touched me where the bad spot is…He touched me with his hand. He touched my bad spot with the boy's bad spot. He touched it a lot of times. The last time was last week…he touched my butt with his bad spot…." Also during the evaluation, V.H. pointed to the genitals of a female child anatomical drawing and said that was where Debbs touched her. She also indicated that the "bad spot" on the male child anatomical drawing was the genitals. The only

physical evidence of possible abuse found by the CARE team was redness around V.H.'s anus. The redness could also be attributed to poor hygiene.

V.H. testified at trial. She was 7 years old at that time. She stated that Debbs touched her in her "bad spots." She said that Debbs' bad spot, or genitals, touched her bad spot, or genitals.[1] She also stated that Debbs touched her bad spot with his hand and touched her "butt" with his bad spot. She further stated that Debbs touched her "chichis," or breasts, with his hand and his mouth. She said that each incident happened more than once.

### BATSON CHALLENGE

In his first issue on appeal, Debbs contends that the trial court erred in overruling his *Batson* challenge. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Prior to the jury being empanelled, Debbs made a *Batson* challenge and informed the trial court that one of two black members of the jury panel was struck by the State. Debbs had informed the trial court prior to voir dire that there were two black jurors on the panel and that Debbs was black. Although the State minimally protested at the time of the *Batson* challenge that the juror who was struck was black, the State did not dispute the earlier representation by Debbs to the trial court about that particular juror. Further, when asked for a response, the State offered a race-neutral reason for its strike. The trial court accepted the State's reason.

---

[1] V.H. also called this her "private spot."

### *Three-step Process*

*Batson* provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race. *Snyder v. Louisiana*, ___ U.S. ___, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008). "'First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.'" *Id*. (quoting *Miller-El v. Dretke*, 545 U.S. 231, 277, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2006) (Thomas, J., dissenting)). The exclusion of even one member of appellant's race from the jury panel for racial reasons invalidates the entire jury selection process. *See Snyde*r, 128 S.Ct. at 1208.

If the opponent of a challenged strike raises a question of purposeful discrimination and the trial court proceeds immediately to the State's race-neutral reasons for the strike, a reviewing court assumes that the opponent has satisfied the first step of the *Batson* process. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008) (citing *Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). The second step of the process does not demand an explanation that is persuasive, or even plausible. *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The issue is the facial validity of the prosecutor's explanation. *Id*. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. *Id*. (quoting *Hernandez*, 500 U.S. at 360.

It is not until the third step that the persuasiveness or the justification of the strike becomes relevant. *Id*. "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Id*. The prosecutor's proffered reasons for striking an individual must be evaluated in light of the circumstances of the case. *See Snyder v. Louisiana*, ___ U.S. ___, 128 S.Ct. 1203, 1210, 170 L.Ed.2d 175 (2008). On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous. *Snyder*, 128 S.Ct. at 1207; *Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008).

The State does not dispute that Debbs satisfied his step-one obligation to make a prima facie showing that the State exercised its peremptory challenge on the basis of race. In offering its race neutral reason for striking the juror, the State explained to the trial court that the juror in question was under the age of 30 and that the State struck all jurors under the age of 30. Debbs did not dispute, and there is nothing in the record that disputes, the State's reason for striking the juror or the assertion that all jurors under the age of 30 were struck. Thus, the trial court did not clearly err in accepting the State's race-neutral reason for striking that juror.

Debbs additionally argues on appeal that the State exercised purposeful discrimination when it chose not to use all of its peremptory strikes and thus did not seat the only other black juror on the panel. Debbs did not challenge the State's non-use of its peremptory strikes in the trial court. This argument is not preserved. *See* TEX. R. APP. P. 33.1.

Debbs's first issue is overruled.

## COMPETENCY OF WITNESS

Debbs contends in his second issue that the trial court erred in finding V.H. competent to testify.

Texas Rule of Evidence 601(a)(2) places the power to determine a child witness's competency into the hands of the trial judge. *Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995); TEX. R. EVID. 601(a)(2). A ruling by the trial court will not be disturbed upon review unless an abuse of discretion is shown. *Id.* Under Rule 601, a child is considered competent to testify unless it appears to the court that he does not possess sufficient intellect to relate the transaction about which she will testify. *Id.* The ability to relate encompasses both "an ability to understand the questions asked and to frame intelligent answers" as well as "a moral responsibility to tell the truth." *Watson v. State*, 596 S.W.2d 867, 870 (Tex. Crim. App. 1980). In determining whether there has been an abuse of discretion, we review the entire testimony of the witness in addition to that given in the hearing on competency. *Clark v. State*, 558 S.W.2d 887, 890 (Tex. Crim. App. 1977).

It appears from the record that prior to the start of the trial, the State called V.H. to the stand to address both the competency issue and an outcry issue. After the court administered the oath to V.H., the prosecutor asked V.H. a series of questions. Although she could not recall what year she was born, V.H. successfully answered questions concerning her name, birthday, current age and age next year, and with whom she lived at the time of the assaults. She said that she knew the difference between telling the truth and telling a lie. The prosecutor explored V.H.'s ability to

distinguish the truth from a lie by asking, "If I were to say to you that this board is green, would that be the truth or would that be a lie?" V.H. correctly answered that it would be a lie because it had been established earlier that the board was white. The prosecutor also asked V.H. if she thought she could tell the truth and if she promised to tell the truth. V.H. answered affirmatively to both questions.

Further, we have reviewed the body of V.H.'s testimony, and it demonstrates that V.H. was able to both understand questions asked of her and intelligently frame answers to those questions. And although she could not recall all the details of the assaults, she could recall and relate that Debbs improperly touched her and where she was touched. Considering V.H.'s responses to the prosecutor's qualification questions as well as her testimony as a whole, we hold that the trial court did not abuse its discretion by finding V.H. competent to testify.

Debbs's second issue is overruled.

### SUFFICIENCY OF THE EVIDENCE

Debbs further contends that the evidence is factually insufficient to support his convictions.

The factual sufficiency of the evidence standard of review has been restated by the Court of Criminal Appeals in *Grotti v. State*:

> In a factual-sufficiency review, the evidence is reviewed in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *accord Johnson v. State*, 23 S.W.3d at 7. Only one question is to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Watson*, 204 S.W. 3d at 415. Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that

the verdict seems clearly wrong and manifestly unjust; and (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Roberts*, 220 S.W.3d at 524 (citing *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 11); *see also Castillo v. State*, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007). "[A]n appellate court must first be able to say, with some objective basis in the record, that the great weight and preponderance of the . . . evidence contradicts the jury's verdict before it is justified in exercising its appellate fact jurisdiction to order a new trial." *Watson*, 204 S.W.3d at 417. A reversal for factual insufficiency cannot occur when "the greater weight and preponderance of the evidence actually favors conviction." *Roberts*, 220 S.W.3d at 524. Although an appellate court has the ability to second-guess the jury to a limited degree, the factual-sufficiency review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur. *Watson*, 204 S.W.3d at 417; *Cain*, 958 S.W.2d at 410.

*Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008).

Debbs argues the evidence was factually insufficient because V.H.'s testimony was inconsistent and the inconsistencies impeached her credibility. The inconsistencies about which he complains were whether V.H. slept in her own room or with her mother or "nanny," whether she was wearing clothes when the assaults occurred or whether Debbs pulled off her clothes, and whether Debbs spoke to her at all during the assaults. He also points to the lack of information contained in the records from the CARE team about V.H.'s outcry that Debbs touched and kissed her breast as an inconsistency in V.H.'s testimony. Debbs also argues the evidence is factually insufficient because V.H. made a similar outcry against a 13 year old neighbor only 4 months earlier, no scientific evidence was presented to suggest that V.H's weight gain and nightmares, which her father said were developments since V.H. moved in with her nanny, were caused by the incidents with Debbs, and no physical evidence of abuse of V.H. was found.

Considering all of the evidence in a neutral light, we do not find the evidence supporting the verdict was so weak that the verdict seemed clearly wrong and manifestly unjust; nor do we find that the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. Accordingly, the jury was rationally justified in finding Debbs's guilt beyond a reasonable doubt.

Debbs's third issue is overruled.

### CONCLUSION

Having overruled each issue presented, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed August 5, 2009
Do not publish
[CRPM]