Opinion filed October 17, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00282-CR

_____

## MANUEL MEDELLIN JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 390th District Court

Travis County, Texas

Trial Court Cause No.  D-1-DC-10-301375

## M E M O R A N D U M   O P I N I O N

Manuel Medellin Jr. appeals his conviction for the offense of indecency with a child by contact. The jury found Appellant guilty and assessed punishment at confinement for twenty years and a fine of $10,000.  The trial court sentenced Appellant accordingly.  We affirm.

In his first issue on appeal, Appellant challenges the sufficiency of the evidence. Appellant argues that the evidence is legally insufficient to establish that an offense was committed because the victim, A.M., "denied any abuse" and because the victim's mother, Sara, "testified that the allegation was fabricated."

We review a challenge to the legal sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury as the sole judge of the witnesses' credibility and the weight to be given their testimony. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899 (citing *Jackson*, 443 U.S. at 319, 326); *see* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979).

The victim's family lived in a one-bedroom apartment, and Appellant moved in for a short period of time. Sara and her boyfriend slept in the bedroom, along with their youngest child, and the four older children slept on a sofa bed with Appellant. Sara did not work outside the home but would occasionally leave the children with Appellant to do laundry or shop for groceries. One day, A.M. told her mother that Appellant, her uncle, had "touched her . . . down [t]here" and indicated toward her genitals. A.M. told Sara that it had only occurred one time, and A.M.'s brother J.J. and a cousin told the same story. Sara called her mother and brother, and her brother called the police and reported the assault.

A.M. was interviewed that same day by Cyndi Cantu, the director of forensic services at the Center for Child Protection, and in addition to what she had told her mother, A.M. said that Appellant "put his weewee in her mouth." A.M. used a male and a female anatomically correct doll to show Cantu what happened, and when asked to clarify, A.M. took the pants off the male doll and put the penis up to her own mouth. While A.M. was being interviewed, Detective Marci Graham, the lead investigator on the case, interviewed Appellant. Detective Graham obtained an arrest warrant the following morning, and Appellant was arrested.

About two weeks before trial, Sara overheard her son J.J. talking about the assault. When one of his cousins accidently touched J.J.'s back, J.J. said that he was going to put the cousin "in jail like [he] did [his] uncle but that was a lie." When Sara asked A.M. about this, A.M. confirmed that the children had lied. A.M. and J.J. told their mother that their cousin had told them to lie and what to say because Appellant was mean. Appellant's counsel and the district attorney's office were both notified, but the case proceeded to trial.

A.M. testified that Appellant had never hurt her. Sara testified about A.M.'s outcry that Appellant had touched her genitals and about the recantation, and Cantu testified about the outcry that Appellant had put his penis in A.M.'s mouth. In addition, Dr. William Lee Carter, a psychologist, testified for the State and explained that, when sexual assault victims are related to or live with the perpetrator, the situation can become even more complicated. Statistically, a child is more likely to feel pressure and thus recant when the victim and perpetrator are related because their family members are torn between believing two relatives. Dr. Carter explained that, when assessing the likelihood that the assault occurred, the investigators consider the circumstances surrounding how the outcry was made and also consider whether the details provided by the child are consistent with a sexual assault. When a child recants, investigators make the same considerations

3

for assessing the truthfulness of the recantation. Dr. Carter explained that it is common for a child to simultaneously recant and confirm the initial outcry by saying that it happened to someone else or that it is not occurring anymore.

When asked on direct examination about her prior statements, A.M. said, "He didn't touch me no more." When she was asked if she remembered saying that Appellant put his penis in her mouth and touched her, she simply said, "On J.J." A.M. would not acknowledge that she had made a contradictory statement before, and her recorded interview with Cantu was admitted as a prior inconsistent statement to impeach A.M.'s trial testimony.

After reviewing the record in the light most favorable to the verdict and giving proper deference to the jury's credibility determinations, we conclude that a rational jury could have found the essential elements of the offense beyond a reasonable doubt. It is the role of the jury to resolve the conflicting evidence at trial, and the jury could have chosen to believe A.M. when she made the outcry and disbelieve her later recantation. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) ("[The jury] may choose to believe some testimony and disbelieve other testimony."). A child victim's outcry statement alone can be sufficient to sustain a conviction for a sexual offense. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991). Appellant's first issue is overruled.

In his second and third issues, Appellant contends that it was error to admit A.M.'s testimony because her competency had not been established on the record.

"Every person is competent to be a witness," including a child, unless the trial court determines that the child appears "not to possess sufficient intellect to relate transactions with respect to which [the child is] interrogated." TEX. R. EVID. 601; *see also Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995). The ability to relate includes both the "ability to understand the questions asked and to frame intelligent answers" and the "moral responsibility to tell the

4

truth." *Watson v. State*, 596 S.W.2d 867, 870 (Tex. Crim. App. 1980). We review a trial court's competency determination for an abuse of discretion. *Broussard*, 910 S.W.2d at 960. To determine whether the trial court abused its discretion, we review the witness's testimony both at the hearing on competency and at trial. *Clark v. State*, 558 S.W.2d 887, 890 (Tex. Crim. App. 1977); *Rodriguez v. State*, 345 S.W.3d 504, 507 (Tex. App.—Waco 2011, pet. ref'd).

We note that Appellant does not argue that the witness could not appreciate her moral responsibility to tell the truth but that "neither the prosecution nor the [trial] court established that she appreciated her moral responsibility to tell the truth." Appellant admits that the trial court held a competency hearing, but he argues that the record "does not reflect that A.M. was ever sworn in as a witness or even admonished to tell the truth." Appellant cites *Torres v. State* and Article 38.071 to support his contention that, "even if A.M. was competent to testify, she must also have been admonished or sworn in." *See* TEX. CODE CRIM. PROC. ANN. art. 38.071 (West Supp. 2012); *Torres v. State*, 33 S.W.3d 252, 256 (Tex. Crim. App. 2000).

The authority cited by Appellant is not applicable to this case. Article 38.071 "applies only to a hearing or proceeding in which the court determines that a child younger than 13 years of age would be *unavailable* to testify." CRIM. PROC. art. 38.071, § 1 (emphasis added). Additionally, the issue in *Torres* was whether a videotape was admissible "because the child was not placed under oath or admonished prior to questioning" that occurred on the videotape. *Torres*, 33 S.W.3d at 253. The child victim in this case was available to testify, and because it was the admissibility of this live testimony that was at issue, there was no requirement that the trial court comply with Article 38.071. Instead, the trial court's duty was to determine whether A.M. appeared to possess sufficient intellect to relate the events that had occurred. *See* TEX. R. EVID. 601(a)(2).

5

The trial court asked A.M. a series of questions outside the presence of the jury. A.M. successfully answered questions concerning her name, age, grade in school, and living arrangements. A.M. testified that her favorite movie was Barbie, and when asked if Barbie was a real person or a toy, A.M. acknowledged that Barbie was a toy. The trial court sought to determine A.M.'s ability to distinguish between a lie and the truth by asking A.M. to identify an object and then asking if it would be true or a lie if someone said that it was something different. For example, A.M. identified carpet and responded that it would be a lie if someone called it a door or a table instead of carpet. Prior to A.M.'s testimony, the trial court stated on the record that A.M. "has been sworn in as a witness pursuant to the law."

Appellant does not point to any testimony in the record that he claims demonstrates a lack of the ability to relate the events that occurred. Based on our review of the trial court's competency examination of A.M. and our review of her testimony at trial, we hold that the trial court did not abuse its discretion when it found that A.M. was competent to testify. *See Davis v. State*, 268 S.W.3d 683, 699–700 (Tex. App.—Fort Worth 2008, pet. ref'd). Appellant's second and third issues are overruled.

In his fourth issue, Appellant claims that the trial court erred when it excluded the opinion testimony of A.M.'s mother. According to Appellant, A.M.'s mother "clearly had the opinion that A.M.'s original allegation was untrue." The State argues that Appellant waived this complaint because he "failed to put on the record what he expected to show" and "the substance of [Sara's] testimony."

On appeal, "there is a distinction between the situation where the defendant desires to elicit certain, specific responses from a State's witness but is precluded from doing so" and "where the defendant is not permitted to question a State's witness about a certain general subject that might affect the witness's credibility."

6

*Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987) (citing *Koehler v. State*, 679 S.W.2d 6, 9 (Tex. Crim. App. 1984)). To preserve error when the trial court excludes certain, specific responses, "it is incumbent upon the defendant to either" have the witness answer the questions on the record or "make an offer of proof of the questions he would have asked and the answers he might have received had he been permitted to question the witness in the presence of the jury." *Koehler*, 679 S.W.2d at 9. In contrast, when the trial court deprives a defendant of the opportunity to cross-examine a witness on a subject affecting the credibility of the witness, the defendant "must merely establish what subject matter he desired to examine the witness about during the cross-examination." *Id.*

Here, the trial court did not prevent Appellant from questioning the State's outcry witness about a subject matter that would show she had malice, bias, or prejudice toward Appellant. Instead, the trial court prohibited a certain response to a specific question after it allowed Appellant to question the witness on the issue of the recantation and the facts surrounding the recantation, and under these circumstances, Appellant must have made an offer of proof to preserve the issue for our review. While we have enough information about the subject matter to determine whether the opinion was admissible, we cannot assess harm without knowing whether Sara would have testified that her opinion was the same after hearing her son recant his allegations or whether her opinion had changed. In the absence of such information, any claim of error has not been preserved for appellate review. *See Koehler*, 679 S.W.2d at 9; *see also* TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.1(a)(1)(A). Appellant's fourth issue is overruled.

We affirm the judgment of the trial court.

JIM R. WRIGHT

CHIEF JUSTICE

October 17, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.