

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-20-00125-CR
_____

ERIK GARZA, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 85th District Court
Brazos County, Texas
Trial Court No. 19-03324-CRF-85 Ct 2

_____

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

A Brazos County jury convicted Erik Garza of indecency with Jamie,[1] a child, by contact. After a punishment trial to the bench in which the trial court found the State's enhancement allegation true, Garza was sentenced to thirty years' imprisonment. On appeal, Garza argues that the evidence is legally insufficient to support the jury's verdict of guilt, Jamie was legally incompetent to testify, and the trial court erred in admitting hearsay evidence.[2]

We find that (1) legally sufficient evidence supported the jury's verdict of guilt, (2) finding that Jamie was competent to testify was not an abuse of discretion, and (3) any error in admitting hearsay was rendered harmless by substantially similar testimony admitted without objection. As a result, we affirm the trial court's judgment.

*(1)	Legally Sufficient Evidence Supported the Jury's Verdict of Guilt*

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the

---

[1]We will use pseudonyms for the child and her family to protect the identity of the child. *See* TEX. R. APP. P. 9.10(a)(3).

[2]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Tenth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Here, Garza was convicted of the lesser-included offense of indecency with a child by contact. "A person commits an offense if, with a child younger than 17 years of age, . . . the person . . . engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PENAL CODE ANN. § 21.11(a)1). "'[S]exual contact' means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: . . . any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child." TEX. PENAL CODE ANN. § 21.11(c)(1). The State alleged that Garza, with intent to arouse or gratify his sexual desire, touched the genitals of Jamie, a child younger than seventeen.[3]

---

[3]It is undisputed that Jamie was younger than seventeen.

At trial, the evidence showed that Jamie was fourteen at the time of the alleged touching and that she was mentally delayed. Robert Casey, the assistant principal at Jamie's school, testified that Jamie was in special education, was intellectually disabled with an intelligence quotient under seventy, and had a speech impairment. Casey said, "If someone were to come up to [Jamie] and tell her a story . . . her ability to discern whether it's fact or fiction, that could be trying for her." Jamie's godmother, Alice, testified that Jamie was "like a baby in her mind."

Jamie's brother, Emilio, who was nine at trial, also said that Jamie was a special needs child. Emilio testified that he was in the courtroom because Garza "was touching [Jamie] under the blanket" while Jamie was sitting on a couch. Emilio, who was on another couch, testified that he could not see what was happening under the blanket but saw the blanket moving because Garza's hands were in Jamie's lap. Emilio demonstrated for the jury what Garza's hands were doing under the blanket and showed the jury that Garza's elbow was moving back and forth. Emilio said that he was the first person to tell his mother that Garza was touching Jamie because he knew Garza "did something bad" and that his mother was mad and made Emilio promise to tell the truth.

Jane Riley, a pediatric nurse practitioner, testified that she conducted a sexual assault examination of Jamie at Scotty's House, a Child Advocacy Center (CAC). Riley's report, which was admitted without objection, contained statements made by Jamie to Riley, including that Garza "squeezed" Jamie's breast, making her feel bad, and touched her genital area. Jamie clarified that Garza touched her genitals under her clothing with "one finger" on the "inside" and that there was blood on her panties. Jamie also said that Garza took photos of her in the shower

4

and had put his mouth on her mouth. According to Riley, Jamie reported pain with urination, vaginal discharge, and bleeding.[4]

Jamie was next to testify and told the jury that she was "[s]cared to talk" about "[s]tuff that[] happened."

When asked what her job was, Jamie responded that it was to "[t]ell the truth." Jamie testified that her "girl parts" included her chest and the area between her legs and that Garza had touched both "girl parts" underneath her clothing. Jamie clarified that Garza touched the inside of her female private and demonstrated the motion for the jury by placing her finger inside of a tissue box opening. Jamie said that she had kept quiet about the incidents because she did not want to get in trouble. She said that her mother, Sara, became aware of the touching because of Emilio's report.

Alice testified that she went to Jamie's home after Sara "was kind of breaking down" and saw Sara crying. Alice testified that Jamie seemed nervous, was crying, and looked as if she believed she was in trouble. According to Alice, while in an emotional state, Jamie said that Garza "touched her in her middle part." During cross-examination, Alice testified that Jamie said Garza had also kissed her.

Sara testified that Emilio told her that Garza was touching Jamie on her private parts. According to Sara, Jamie initially said the allegation was untrue but, after Alice came over, said Garza had touched her breast and vagina. Sara said Jamie pointed to her "middle part," said "[Garza had] touched [her] down there," and said that the touching was both on the outside and

---

[4]Riley said that the vaginal discharge was normal and that Jamie had already gotten her period.

inside of her vagina. Patricia Matush, a detective with the College Station Police Department, testified that she opened an investigation for sexual assault of a child after speaking with Sara. Matush arrested Garza after Emilio said Garza had touched Jamie inappropriately.

Cameron Hines, a forensic interviewer with the CAC, testified that she was tipped off to Jamie's developmental delays when Jamie had difficulty stating her birthday and understanding certain words.[5] Mary Watkins, an investigator for Child Protective Services, testified that she did not believe that Jamie knew the difference between the truth and a lie based on her answers to Watkins's questions on an unrelated matter. Even so, when asked what the term "truth meant," Jamie later said it meant "being honest."

Garza argues that the lack of physical evidence demonstrates that the evidence is legally insufficient to show that he touched Jamie with the intent to arouse or gratify his sexual desire. In a sufficiency analysis, the question "is not what evidence there isn't, it's what evidence there is." *Carmona v. State*, 610 S.W.3d 611, 615 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (quoting *Acosta v. State*, 429 S.W.3d 621, 630 (Tex. Crim. App. 2014)). "Circumstantial evidence alone can be sufficient to establish guilt." *Id.* (citing *Acosta*, 429 S.W.3d at 625). "In such cases, it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Id.* (citing *Acosta*, 429 S.W.3d at 625). Garza also argues that the State's trial witnesses were not credible, but credibility was an issue for the jury to determine. Also, "[t]he jury may use common sense and apply common knowledge,

---

[5]Hines said that, during her interview with Emilio, Emilio said "[Garza] was moving his arm under the blanket."

observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Id.* (citing *Acosta*, 429 S.W.3d at 625).

Here, Jamie's testimony established that Garza touched her vagina underneath her clothing. "The testimony of a child victim alone is sufficient to support a conviction for . . . indecency with a child." *Glockzin v. State*, 220 S.W.3d 140, 147 (Tex. App.—Waco 2007, pet. ref'd) (quoting *Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd), *overruled on other grounds by Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008)). Also, sexual contact of Jamie's vagina by Garza was established by Emilio's demonstration of how Garza touched Jamie under the blanket, Riley's testimony that Jamie said Garza touched her on the inside of her private with one finger, Alice's testimony that Jamie said Garza "touched her in her middle part," and Sara's testimony that Jamie said Garza touched the outside and inside of her vagina. Evidence that Garza also touched Jamie's breast, kissed her, and took photos of Jamie in the shower supported the jury's finding that the touching was with intent to arouse or gratify Garza's sexual desire.

Because we find that the jury's verdict was supported by legally sufficient evidence, we overrule this point of error.

*(2)     Finding that Jamie Was Competent to Testify Was Not an Abuse of Discretion*

Garza also argues that the trial court erred in finding Jamie competent to testify. We disagree.

"Generally, every person is presumed competent to testify." *Keller v. State*, 604 S.W.3d 214, 223 (Tex. App.—Dallas 2020, pet. ref'd) (citing TEX. R. EVID. 601(a)). However, a

7

"child—or any other person—whom the court examines and finds lacks sufficient intellect to testify concerning the matters in issue" is incompetent. TEX. R. EVID. 601(a)(2). The language of "Rule of Evidence 601(a)(2) places the power to determine a child witness's competency into the hands of the trial judge." *Rodriguez v. State*, 345 S.W.3d 504, 507 (Tex. App.—Waco 2011, pet. ref'd) (citing TEX. R. EVID. 601(a)(2); *Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995)). As a result, "[a] ruling by the trial court will not be disturbed on review unless an abuse of discretion is shown." *Id.* (citing *Broussard*, 910 S.W.2d at 960).

"[T]he party seeking to exclude the witness from testifying must raise the issue of competency and 'shoulders the burden of establishing incompetency.'" *Baldit v. State*, 522 S.W.3d 753, 761 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (quoting *Gilley v. State*, 418 S.W.3d 114, 120 (Tex. Crim. App. 2014)). "The competency of a child witness is a preliminary question for the trial court to determine under Rule of Evidence 104(a), and the court is not bound by the rules of evidence in making this determination." *Id.* (citing TEX. R. EVID. 104(a); *Gilley*, 418 S.W.3d at 121).

"We give great deference to the trial judge who was there to evaluate the child and her responses." *Escamilla v. State*, 334 S.W.3d 263, 267 (Tex. App.—San Antonio 2010, pet. ref'd). "A trial court does not abuse its discretion if its ruling was within the zone of reasonable disagreement." *Keller*, 604 S.W.3d at 223 (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). "In determining whether there has been an abuse of discretion, we review the entire testimony of the witness in addition to that given in the hearing on competency." *Rodriguez*, 345 S.W.3d at 507; *see Baldit*, 522 S.W.3d at 761.

8

"Under Rule 601, a child is considered competent to testify unless it appears to the court that she does not possess sufficient intellect to relate the transaction about which she will testify." *Rodriguez*, 345 S.W.3d at 507. "The ability to relate encompasses both 'an ability to understand the questions asked and to frame intelligent answers' as well as 'a moral responsibility to tell the truth.'" *Id.* (quoting *Watson v. State*, 596 S.W.2d 867, 870 (Tex. Crim. App. 1980)). In addressing the "competency of a child witness, the trial court must consider whether the child witness possesses (1) the ability to intelligently observe the events in question at the time of the occurrence, (2) the capacity to recollect the events, and (3) the capacity to narrate the events." *Baldit*, 522 S.W.3d at 761 (citing *Torres v. State*, 424 S.W.3d 245, 254 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd)).

During Jamie's questioning outside the presence of the jury, she said she was in the ninth grade and named her school. Jamie told the trial court that she was scared and was not comfortable testifying. Jamie did not know what the words "facts" or "oath" meant, what it meant to be a witness, or what a witness in the courtroom was supposed to do. In establishing whether Jamie knew the difference between the truth and a lie, the following transpired:

> THE COURT: You have to tell the truth. You know what the truth is? You know the difference between truth and a lie?
>
> THE WITNESS: Yeah.
>
> THE COURT: Okay. Do you believe you can get on the witness stand -- if you were a witness, would you be able to know the difference between telling the truth and telling a lie?
>
> THE WITNESS: No.

THE COURT: All right. Do you know what the difference is between telling the truth and telling a lie?

THE WITNESS: Yeah.

. . . .

THE COURT: You do? Okay. So, if you were put under an oath like you've seen on television, would you be able to tell the truth?

THE WITNESS: Yeah.

THE COURT: And would you promise me that you would do that if people ask you questions?

THE WITNESS: (Moving head up and down)

THE COURT: Is that a yes?

THE WITNESS: Yes.

The trial court then allowed the State to question Jamie outside of the presence of the jury, as

follows:

Q      Okay. So, you promised your little brother that you were going to bring him some ice cream back from the store, and you didn't do it. And then he asked you, "Well, did you bring me ice cream back from the store?" And you told him yes, what would that be? Would that be real or not real?

A      Real.

. . . .

Q      If you didn't do it?

A      (Moving head side to side)

Q      If you didn't bring him the ice cream back, would that be real or not real?

A      Not real.

10

Q      Not real?  Okay.  So you understand what that difference is; right?

A      (Moving head up and down)

Q      And you understand when you're in a courtroom, it's very important that you understand what's real or not real or true or not true.  You understand?

A      Uh-huh.

Q      And that people can get in trouble if they don't tell that.  You understand that?

A      Yeah.

Q      And you've been told that; right?  And people can get hurt if you don't do that.  You understand?

A      Uh-huh.

Q      Okay.  So you think you can do that?

A      Yeah.

When the trial court explained the meaning of the word "facts," Jamie also said she would be able to communicate facts and that she knew what it meant to be untruthful.

To assist its decision, the trial court also reviewed Jamie's interview with Hines, a forensic interviewer with the CAC, which showed that Jamie was able to answer Hines's open-ended questions.  When asked what it meant to tell the truth or a lie, Jamie said she did not know.  Even so, Jamie, who was wearing red shoes, told Hines that it would be a lie to say that her shoes were purple.  Jamie also told Hines that she did not promise to talk about things that were "for real" because she was scared but later promised to talk about things that were "for real."  When asked if anyone had ever touched her "girl parts," Jamie said that Garza had.  Jamie

11

told Hines that Garza squeezed her breast with his hand inside of her shirt while she was on the couch at her mother's house. Jamie also said that, on another day, Garza touched her, with his hand, where she uses the restroom, that he "stuck" his fingers "all the way in," that it felt bad, and that "some blood came out." Garza said that the touching of her vagina happened more than one time. Jamie said that Garza took videos of her with his cell phone while she was naked in the shower.

After reviewing the CAC interview, the trial court understood that, while Jamie did not use the terms "truth" and "lie," she referred to what was "for real" and "not real." As a result, the trial court engaged in the following questioning before Jamie's testimony:

> THE COURT: You remember what I was asking you about, about knowing what's real and what's not real? You remember that?
>
> THE WITNESS: Yes.
>
> THE COURT: And you remember you saying that's like telling the truth and not telling the truth? And you understand that if you don't tell the truth, people can get in trouble and a lot of people can get hurt. You understand that?
>
> . . . .
>
> THE WITNESS: Yes.
>
> THE COURT: And so, what would happen if you told your mom -- if you didn't tell your mom the truth, would you get in trouble?
>
> . . . .
>
> THE WITNESS: Yes.
>
> THE COURT: And so she expects you to tell the truth; right?
>
> . . . .

12

THE WITNESS: Yes.

THE COURT: You understand you've got to do that when you're testifying in court like this. You understand?

. . . .

THE WITNESS: Yes.

Jamie did not understand the oath and expressed difficulty when questioned about knowing the difference between a truth and a lie. Even so, "[t]he child witness need not understand the 'obligation of the oath,' but the trial court 'must impress the child with the duty to be truthful.'" *Baldit*, 522 S.W.3d at 761 (quoting *Torres*, 424 S.W.3d at 254) (citing *Gilley*, 418 S.W.3d at 121 ("[A] trial court may also inquire whether the child-witness possesses the capacity to appreciate the obligations of the oath—or can at least distinguish the truth from a lie.")). The hearing showed that, when the terms "truth" and "lie" were explained to Jamie by using examples and terms she knew, Jamie was able to understand that she was supposed to tell the truth when testifying in court.

Garza complains that Jamie's intellectual disability, confusion about who she was living with at the time of the incident, and confusion about whether Garza and Emilio were related also showed that she was not a competent witness. Although Jamie's mind was "like a baby in her mind," "[t]here is no precise age under which the child is deemed incompetent to testify." *Keller*, 604 S.W.3d at 223 (quoting *Torres v. State*, 424 S.W.3d 245, 254 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd)). Moreover, "[a]ny inconsistent testimony about a specific event might affect the child's credibility, but not her competency . . . [a]nd the child's inability to

13

testify to collateral matters does not affect the child's competency." *Id.* (citing *Torres*, 424 S.W.3d at 255).

In this case, we find that the hearing outside of the jury's presence, as well as Jamie's trial testimony, supported the trial court's findings that she had "(1) the ability to intelligently observe the events in question at the time of the occurrence, (2) the capacity to recollect the events, and (3) the capacity to narrate the events." *Baldit*, 522 S.W.3d at 761. We conclude that Jamie's "testimony does not demonstrate on its face that she was not competent to testify." *Id.* at 764. As a result, we find no abuse of discretion in the trial court's decisions that Garza did not meet his burden to show that Jamie was incompetent and that, consequently, Jamie was a competent witness.

*(3)      Any Error in Admitting Hearsay Was Rendered Harmless by Substantially Similar Testimony Admitted Without Objection*

"Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." *Zuliana v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (citing TEX. R. EVID. 801(d)). "In order for hearsay to be admissible, it must fit into an exception provided by a statute or the Rules of Evidence." *Id.* (citing TEX. R. EVID. 802). "One such exception is Rule 803(2), the excited utterance exception." *Id.*

Rule 803(2) of the Texas Rules of Evidence defines the excited-utterance exception to the hearsay rule as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2). "The basis for the excited utterance exception is 'a psychological one, namely, the fact that when a man is in the

14

instant grip of violent emotion, excitement, or pain, he ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood and the "truth will come out."'" *Zuliani*, 97 S.W.3d at 595 (quoting *Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972)). "In other words, the statement is trustworthy because it represents an event speaking through the person rather than the person speaking about the event." *Id.*[6]

Here, Garza objected to testimony from Alice about Jamie's statements because, though Alice said Jamie was emotional, she also testified that she calmed Jamie down before Jamie told her that Garza had touched her. Alice also said that Jamie's statement came one day after Emilio's disclosure of the touching to Sara.

Even assuming that Jamie's statement to Alice was not an excited utterance, we may not reverse for nonconstitutional error unless, after examining the entire record, we have a "fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict." *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). We disregard any error that does not affect the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). Thus, even "[e]rroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'" *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983

---

[6]In determining whether a hearsay statement is admissible as an excited utterance, the court may consider factors that include "the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving." *Apolinar v. State*, 155 S.W.3d 184, 187 (Tex. Crim. App. 2005). These are simply factors to consider; they are not, by themselves, dispositive. *Zuliani*, 97 S.W.3d at 596. "The critical determination is 'whether the declarant was still dominated by the emotions, excitement, fear, or pain' of the event or condition at the time of the statement." *Id.* (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994)).

S.W.2d 713, 718 (Tex. Crim. App. 1998)). Error in the admission of evidence is rendered harmless when "substantially the same evidence" is admitted elsewhere without objection. *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991), *superseded by statute on other grounds*, TEX. CODE CRIM. PROC. ANN. art. 38.37; *see Liggins v. State*, 979 S.W.2d 56, 64 (Tex. App.—Waco 1998, pet. ref'd).

Garza failed to object to substantially the same evidence admitted without objection. Before Alice's testimony, Riley's report, which was admitted without objection, contained statements made by Jamie to Riley, including that Garza "squeezed" Jamie's breast, making her feel bad, and touched her genital area. Jamie clarified that Garza touched her genitals under her clothing with "one finger" on the "inside," and that there was blood on her panties. Also, after Alice's testimony, Sara testified that, after Alice came over, Jamie said Garza had touched her breast and vagina. Sara said that, during the conversation, Jamie pointed to her "middle part" and said, "[Garza] touched me down there." Because Garza failed to object to (1) Riley's report and testimony showing that Jamie made substantially the same statements to Riley, and (2) Sara's testimony about statements Jamie made to Alice, we find no harm from any alleged error in the admission of Alice's statements. We overrule Garza's last point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     July 12, 2021
Date Decided:      August 6, 2021

Do Not Publish